# United States Court of Appeals
## For the First Circuit

No. 13-1333

ANGEL SANCHEZ, Individually and as
Administrator of the Estate of Rafaela Sanchez,

Plaintiff, Appellant,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Torruella, Howard, and Kayatta,
Circuit Judges.

Paul F. Kenney, with whom Kristen A. Barnes and Kenney &
Conley, P.C. were on brief, for appellant.
George B. Henderson, II, Assistant United States
Attorney, with whom Carmen M. Ortiz, United States Attorney, was on
brief, for appellee.
Timothy C. Kelleher III, Cooley Manion Jones LLP, Thomas
R. Murphy, Law Offices of Thomas R. Murphy, LLC, Thomas M. Bond,
The Kaplan/Bond Group, Sara J. Trezise and Trezise Law Group on
brief for Massachusetts Academy of Trial Lawyers, amicus curiae.

January 14, 2014

**KAYATTA, Circuit Judge**.  Plaintiff Angel Sanchez, a widower and the executor of his wife's estate, sued his wife's doctors for medical malpractice.  As it turned out, those doctors were federal employees, against whom claims are forever barred unless brought within the two-year limitations period Congress allowed under the Federal Tort Claims Act ("FTCA"), as opposed to the three-year period allowed by Massachusetts law for medical malpractice claims.  As it also turned out, those doctors' status as federal employees was not readily apparent to one who undertook no investigation.  Mr. Sanchez's lawyers both made no such investigation and waited more than two years before presenting his claim.  Based on our prior, controlling holding in a closer case, Gonzalez v. United States, 284 F.3d 281 (1st Cir. 2002), we affirm the district court's decision that it had no choice but to dismiss this lawsuit.

## I. Background

The accuracy of the allegation that the doctors were negligent is not yet at issue in this stage of this lawsuit.  Otherwise, the material facts of this case, especially those relating to the procedural history and posture of the suit, are undisputed.  Cf. Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010).

Dr. Rafaela Sanchez[1] died on April 24, 2009, two days after she delivered her third child, by caesarean section, at North Shore Medical Center-Salem Hospital ("NSMC").[2] The doctors who treated her at NSMC, Drs. Kristin Cotter and Kalinda Dennis, worked for Lynn Community Health Center ("LCHC"), where Dr. Sanchez had received prenatal care. Angel Sanchez contends that the treating doctors knew or should have known that his wife had at least one of two potentially dangerous conditions, placenta previa[3] and placenta accreta,[4] and so required special care in the removal of her placenta, and probably a hysterectomy, to minimize the risk of hemorrhage. Plaintiff claims that Dr. Cotter left the hospital after the delivery, leaving Dr. Sanchez in the care of Dr. Dennis,[5]

_____

[1] Rafaela Sanchez was an anesthesiologist.

[2] The allegation in the complaint that Dr. Sanchez was admitted to the hospital on April 22, 2010, but died April 24, 2009, appears to be a scrivener's error.

[3] Placenta previa is "the condition in which the [placenta] is implanted in the lower segment of the uterus, extending to the margin of the internal cervical os [(opening)] or partially or completely obstructing the os." Stedman's Medical Dictionary 1389 (Maureen Barlow Pugh et al. eds., 27th ed. 2000).

[4] Placenta accreta is "the abnormal adherence of the chorionic villi [(tiny vascular projections from the membrane between fetus and mother)] to the myometrium [(the muscular wall of the uterus).]" Stedman's Medical Dictionary 1175, 1389, 1962 (Maureen Barlow Pugh et al. eds., 27th ed. 2000). Essentially, parts of the placenta attach too strongly to the uterine wall. See Domann v. Vigil, 261 F.3d 980, 982 n.2 (10th Cir. 2001).

[5] Plaintiff claims that Dr. Dennis was only a medical resident; the government disagrees. The point is immaterial to this appeal.

and that neither doctor performed a hysterectomy until after hemorrhaging began. When the bleeding persisted (or resumed), Dr. Sanchez died.

Mr. Sanchez retained legal counsel at some point prior to February 2010. Counsel waited until April 11, 2012--35 ½ months after Dr. Sanchez's death--to file suit on Mr. Sanchez's behalf against Dr. Cotter in Massachusetts state court. Nine days later, they filed an amended complaint, adding Dr. Dennis as a defendant. Unbeknownst to Mr. Sanchez and his counsel, as employees of LCHC both doctors were deemed to be federal employees under the Federally Supported Health Centers Assistance Act of 1992, Pub. L. 102-501, 42 U.S.C. § 233. As we have explained before, see Gonzalez v. United States, 284 F.3d 281, 286, 288, 291 (1st Cir. 2002), and explain again below, tort claims against such doctors for malpractice within the scope of their employment are claims against the United States, barred if not properly pursued within two years of their accrual (as opposed to three years under Massachusetts law, see Mass. Gen. Laws ch. 260, § 2A).

The United States removed the case to federal court, and substituted itself as the defendant. See 28 U.S.C. § 2679(d). The district court dismissed the suit for lack of subject matter jurisdiction after finding it time-barred. Mr. Sanchez appeals.

-4-

## II. The Federal Tort Claims Act

Federal courts lack jurisdiction over claims against the United States unless the government has waived its sovereign immunity. See, e.g., F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). Absent waiver, this immunity applies to tort claims against federal employees for conduct within the scope of their employment. Cf. 28 U.S.C. §§ 1346(b)(1), 2679; Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). The FTCA is "a limited waiver" of that immunity, Abreu v. United States, 468 F.3d 20, 23 (1st Cir. 2006), giving federal courts jurisdiction over civil claims against the government for death or injury "caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

The FTCA's limited waiver of immunity comes with an expiration date. Specifically, an FTCA claim is "forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after" the agency denies the claim. Id.

§ 2401(b).[6]  The FTCA's two-year bar for presenting claims creates a trap for the unwary who fail to recognize its applicability to a specific case and thus fail to act at all within two years of accrual, or who sue in time but fail to first present the claim to the appropriate federal agency.  In 1988, Congress provided leeway for individuals in the latter category.  See Federal Employees Liability Reform and Tort Compensation Act of 1988 ("Westfall Act"), Pub. L. 100-694, 102 Stat. 4563.  Under the Westfall Act, if a tort case is filed in federal court or removed from state court and the United States is substituted as the defendant, see 28 U.S.C. § 2679(d)(1)-(3), the claim will be deemed timely under section 2401(b) if "(A) the claim would have been timely had it been filed on the date that the underlying civil action was commenced, and (B) the claim is presented to the appropriate Federal agency within sixty days after the dismissal of the civil action."  28 U.S.C. § 2679(d)(5).  Congress has not otherwise seen fit to alter the two-year bar (in a way material to this suit)

_____

    [6]  We read this disjunctive language as setting out two deadlines, both (not just either) of which must be satisfied. Otherwise, there would effectively  be no deadline at all.  See Ellison v. United States, 531 F.3d 359, 361-62 (6th Cir. 2008). The requirement that an FTCA claim be administratively exhausted derives independently from 28 U.S.C. § 2675(a), which provides that an FTCA "action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . ."

since doubling its length in 1949. <u>See</u> 81 Cong. Ch. 92, § 1, 63 Stat. 62 (1949).

It is undisputed that, in this case, Drs. Cotter and Dennis were federal employees at the time of their alleged malpractice, the FTCA applies to the claims brought against them (now against the United States), and Mr. Sanchez did not present his claim to any federal agency, or file suit, within two years of his wife's death. The district court therefore dismissed this lawsuit, finding that it lacked subject matter jurisdiction to hear a case against the United States not allowed under the FTCA.

### III. Analysis

Mr. Sanchez argues that under the "discovery" rule, his claim did not accrue until May 27, 2010, at the earliest. Alternatively, he argues that the running of the two-year period was equitably tolled long enough to salvage this case. Having rejected such arguments in <u>Gonzalez</u> on facts more favorable to a tardy plaintiff, and otherwise finding no basis in the law to reach a contrary result in this case, we must also reject Mr. Sanchez's arguments and affirm the judgment of dismissal.

### A. Exhaustion or timeliness?

Questions of exhaustion and timeliness pose similar potential bars to this lawsuit. They may both be seen as jurisdictional bars. <u>See, e.g.</u>, <u>Román-Cancel</u> v. <u>United States</u>, 613 F.3d 37, 42 (1st Cir. 2010) (timeliness); <u>Barrett ex rel. Estate of</u>

<u>Barrett</u>, 462 F.3d 28, 37 (1st Cir. 2006) (exhaustion); <u>Acosta</u> v. <u>U.S. Marshals Serv.</u>, 445 F.3d 509, 513 (1st Cir. 2006)(same); <u>Gonzalez</u> v. <u>United States</u>, 284 F.3d 281, 287, 291 n.11, 293 (1st Cir. 2002) (treating timeliness as jurisdictional in affirming dismissal of an unexhausted claim, and concluding that section 2679(d)(5) did not apply). Alternatively, either or both may be seen as nonjurisdictional, but essential, claim-processing rules. <u>See, e.g.</u>, <u>Kwai Fun Wong</u> v. <u>Beebe</u>, 732 F.3d 1030, 1039 (9th Cir. 2013) (en banc) (concluding that section 2401 constitutes a non-jurisdictional claim-processing rule); <u>Glade ex rel. Lundskow</u> v. <u>United States</u>, 692 F.3d 718, 723 (7th Cir. 2012) (exhaustion requirement is not jurisdictional and may be waived). In either event, we certainly have some "leeway to choose among threshold grounds for denying audience to a case." <u>Sinochem Int'l Co. Ltd.</u> v. <u>Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 431 (2007) (citations and internal quotation marks omitted).

Determining that this lawsuit should have been dismissed without prejudice due to failure to exhaust would be the narrowest approach to disposing of this appeal, because it is undisputed that Mr. Sanchez has never presented his claim to the Department of Health and Human Services. <u>See</u> <u>McNeil</u> v. <u>United States</u>, 508 U.S. 106, 113 (1993); <u>Celestine</u> v. <u>Mount Vernon Neighborhood Health Ctr.</u>, 403 F.3d 76, 84 (2d Cir. 2005) (affirming a dismissal where failure to exhaust barred the claim "and would continue to bar it

even if any possible unjust effects of disparities between state and federal statutes of limitations were remedied by equitable tolling."). Mr. Sanchez would then presumably present the claim to the agency within sixty days of final entry of the judgment of dismissal; the agency would deny the claim as untimely, and Mr. Sanchez would file suit anew. At that point, the FTCA's exhaustion requirement arguably would have been satisfied, leaving only the question of timeliness. With the aid of the Westfall Act, Mr. Sanchez would then present exactly the same arguments that he now presents, asking us to find that this suit was commenced within two years of when his claim accrued.

Little commends such an approach unless it is truly necessary. Nor does any party request it, each presumably recognizing that it would add expense and delay without offering any countervailing pragmatic benefit. Accordingly, as we did in Gonzalez, we find it most appropriate to forgo the question of administrative exhaustion and go straight to the question of timeliness upon which the final disposition of this case will necessarily turn.[7]

---

[7] In light of our decision to reach the timeliness question first, we need not address whether exhaustion is waivable or whether the government has waived that argument on appeal. Cf. Dávila-Álvarez v. Escuela de Medicina Universidad Cent. del Caribe, 257 F.3d 58, 67 (1st Cir. 2001) (holding that the government waived the exhaustion requirement).

**B.      When did the claim accrue?**

The parties agree that our review of the district court's ruling under Rule 12(b)(1)[8] is de novo, as the relevant facts are not disputed.  See Donahue v. United States, 634 F.3d 615, 623 (1st Cir. 2011) (noting that while appellate review of dismissals under Rule 12(b)(1) "sometimes requires deference to the trial court," an appeal involving "only the objective reasonableness of the plaintiffs' failure to discern at an earlier time both their injury and its likely cause" is reviewed de novo).

As noted above, the FTCA limitations period expires two years after the claim accrues.  28 U.S.C. § 2401(b).  A cause of action generally accrues when the plaintiff is injured.  Donahue, 634 F.3d at 623.  Nevertheless, in FTCA medical malpractice cases, the "discovery rule" may delay accrual until a plaintiff knows (or reasonably should know) both that he is injured and what caused his injury; it does not, however, postpone accrual until a potential

---

[8]  Although Plaintiff argues in seeking equitable tolling that the timeliness of his complaint is not jurisdictional, he does not appear to object to Rule 12(b)(1) as the vehicle for the dismissal here.  Even if the motion should have been brought under Rule 12(b)(6), however, it would then have been converted to a motion for summary judgment, Fed. R. Civ. P. 12(d).  See Cruz-Vázquez v. Mennonite Gen. Hosp., Inc., 717 F.3d 63, 68 & n.6 (1st Cir. 2013) (where motion should have been considered under Rule 12(b)(6), not 12(b)(1), reviewing the record under the summary judgment standard).  Given that the facts are undisputed and both sides were heard and presented evidence on the timeliness issue, we cannot see how the result would have changed had plaintiff asked the court to proceed under Rule 56.  Cf. Ramírez-Carlo v. United States, 496 F.3d 41, 46 (1st Cir. 2007) (reviewing a grant of summary judgment as to the timeliness of an FTCA claim).

plaintiff also learns that his injury was negligently inflicted. See id.; see also United States v. Kubrick, 444 U.S. 111, 122-23 (1979). The discovery rule incorporates an objective standard. To delay commencement of the running of the statute of limitations, "the factual basis for the cause of action must have been inherently unknowable [that is, not capable of detection through the exercise of reasonable diligence] at the time of injury." Gonzalez, 284 F.3d at 288-89 (citation and internal quotation marks omitted); see also Ramírez-Carlo v. United States, 496 F.3d 41, 47 (1st Cir. 2007). "Once a plaintiff knows of the injury and its probable cause, he/she bears the responsibility of inquiring among the medical and legal communities about whether he/she was wronged and should take legal action." Gonzalez, 284 F.3d at 289 (citing Kubrick, 444 U.S. at 123).

It is beyond reasonable dispute that the claim here accrued well before April 11, 2010. Dr. Sanchez died on April 24, 2009, after giving birth. Her injury was then, by its nature, complete and obvious. The cause--post-partum bleeding--was both known and chronicled contemporaneously. The death of a generally healthy woman in childbirth is sufficiently rare in this country today so as to make most reasonable people ask why it happened. Mr. Sanchez is apparently just such a reasonable person, who wisely and understandably turned to experts in an effort to answer that

question, retaining his present law firm sometime prior to February 2010.[9]

The decision to retain malpractice counsel following a mother's death in childbirth is a telling sign that a reasonable person would have concluded that "reasonable diligence" was called for in order to determine whether there was negligence. Gonzalez, 284 F.3d at 289-90 (claim accrued at the latest when plaintiff retained counsel); see also Ramírez-Carlo, 496 F.3d at 48. Here, moreover, there was much information available to Plaintiff and his counsel to raise further cause for diligent inquiry. The operative and discharge reports[10] identified the risk factors known before the first surgery (placenta previa and possible placenta accreta), explained what steps were taken, and expressly attributed Dr. Sanchez's hemorrhage to "DIC"--that is, disseminated intravascular

---

[9] Neither Mr. Sanchez nor his counsel have volunteered the precise date counsel was retained. At oral argument, counsel indicated that he was on board by no later than roughly two months before he received, in February 2010, 427 pages of hospital records in response to his request.

[10] The government, which offered these reports, averred only that it had received them from Plaintiff's counsel. Plaintiff does not dispute that they were part of the 427 pages of reports Plaintiff received in February 2010. (The records that Plaintiff says were incomplete were the intraoperative, not postoperative, reports.) Plaintiff also offers no evidence as to when his counsel obtained the Amended Surgical Pathology Report.

coagulation, a dangerous bleeding condition.[11]  Those reports,
combined with the Amended Surgical Pathology Report that was
completed and available in May 2009, provide evidence that Dr.
Sanchez suffered from both placenta previa and placenta accreta,
the risky conditions on which plaintiff's complaint was premised.

Mr. Sanchez notes that the autopsy report was not
available until May of 2010.  The autopsy report, though, largely
confirmed information in or suggested by the already available
records: it listed as the cause of death postpartum DIC of unknown
cause, and both placenta previa and placenta accreta as "final
diagnoses."  In short, it revealed no new cause of injury.

Mr. Sanchez also argues that the claim did not accrue
until April 2012, when he received legible copies of the final six
pages of medical reports including the handwritten intraoperative
reports.  He does not adequately explain, however, either what
efforts were made to get them sooner, or how their absence
precluded him from timely filing his claim.  Cf. T.L. ex rel.
Ingram v. United States, 443 F.3d 956, 964-65 (8th Cir. 2006)
(noting that a cause of action may not accrue until critical
medical records are received, but declining to toll the limitations

---

[11]  Disseminated intravascular coagulation is "a hemorrhagic
syndrome that occurs following the uncontrolled activation of
clotting factors and fibrinolytic enzymes throughout small blood
vessels . . . resulting in tissue necrosis and bleeding." Stedman's
Medical Dictionary 371 (Maureen Barlow Pugh et al. eds., 27th ed.
2000).

period where the plaintiff did not show that only the missing records held the critical information). He points to no information in these records that is both newly revealed and reasonably necessary to ascertaining the cause of the injury. In sum, in this case arising out of an unexpected nosocomial death, witnessed by identifiable professionals who chronicled the injury, its cause, and their own acts, the claim accrued at the latest by the date prior to February 2010 when Mr. Sanchez retained counsel to investigate a malpractice claim. Whether it accrued earlier, we need not decide.

**C.      Is equitable tolling available under the FTCA?**

There exists a long running debate over whether the concept of equitable tolling can be used to delay the running of the timeliness requirements that are conditions to the FTCA's waiver of sovereign immunity. Rather than focusing directly on the language and history of the FTCA as one might expect, courts have generally approached this question indirectly, asking whether the applicable time limit is "jurisdictional" and, if so, deeming equitable tolling to be unavailable. See, e.g., Kwai Fun Wong v. Beebe, 732 F.3d 1030, 1035-47 (9th Cir. 2013); Arteaga v. United States, 711 F.3d 828, 832-3 (7th Cir. 2013); see generally John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-38 (2008) (discussing the relationship between absolute or "jurisdictional" deadlines and equitable tolling). Most recently, the Supreme Court

-14-

has given added credence to this approach. See Sebelius v. Auburn Reg'l Med. Ctr., 133 S.Ct. 817, 824 (2013) ("[W]ere we to type the governing statute 'jurisdictional'" there could "be no equitable tolling." (citation omitted)).

This circuit has previously opined that the FTCA's timeliness requirements are jurisdictional. See, e.g., Román-Cancel v. United States, 613 F.3d 37, 42 (1st Cir. 2010) (explaining that "[c]ompliance with the FTCA's temporal deadlines is both mandatory and jurisdictional"). We have also nevertheless assumed that equitable tolling can be applied to those deadlines. See Ramírez-Carlo v. United States, 496 F.3d 41, 48-49 & n.3 (1st Cir. 2007); Rakes v. United States, 442 F.3d 7, 25 (1st Cir. 2006). But see McIntyre v. United States, 387 F.3d 38, 61 & n.8 (1st Cir. 2004) (questioning whether equitable tolling applies to FTCA). We are not, it seems, the only circuit to have proceeded in this manner. See T.L. ex rel. Ingram v. United States, 443 F.3d 956, 961 (8th Cir. 2006).

The observation in Sebelius and like cases that labeling these deadlines "jurisdictional" would preclude application of equitable tolling suggests that something must eventually give in our circuit's jurisprudence. The Supreme Court's most recent guidance on what is "jurisdictional" suggests that we may have erred in presuming that subject matter jurisdiction hinged on compliance with the FTCA's deadlines for presenting claims. See

-15-

generally <u>Gonzalez</u> v. <u>Thaler</u>, 132 S. Ct. 641, 648 (2012) (pressing "a strict distinction between truly jurisdictional rules . . . and nonjurisdictional claim-processing rules" (citations and quotation marks omitted)).  If we did so err, however, it does not follow that we also erred in presuming that equitable tolling can stay the running of the FTCA's deadlines.  To the contrary, classifying the deadlines as non-jurisdictional enhances the case for finding equitable tolling to be available.  <u>See</u> <u>Kwai Fun Wong</u>, 732 F.3d at 1038 (FTCA deadlines are not jurisdictional and equitable tolling is available), <u>overruling</u> <u>Marley</u> v. <u>United States</u>, 567 F.3d 1030 (9th Cir. 2009).

To decide the case now before us, we need not definitively unravel this skein.  Rather, we can approach this case as we approached our decision in <u>Gonzalez</u>, giving the plaintiff the benefit of assuming that equity can toll the running of the FTCA's limitations period if a factual basis for tolling exists.

**D.      Has plaintiff established a factual basis for invoking equitable tolling?**

The trap for the unwary into which Mr. Sanchez has fallen arises because doctors who work at facilities that may appear to be nongovernmental may nevertheless be deemed federal employees because of the manner in which their employers receive federal funds.  <u>See</u> 42 U.S.C. § 233(g).  The risk of encountering such a trap need be taken seriously.  A publicly-searchable federal database suggests that, for 2014, there are thirty-one entities

-16-

like LCHC in Massachusetts and seventy-seven in the First Circuit. U.S. Dep't of Health and Human Servs. Health Res. and Servs. Admin., Search current deemed entities, http://bphc.hrsa.gov/ftca/healthcenters/ftcahcdeemedentitysearch. html (last visited Dec. 16, 2013). Understood in this context, Gonzalez instructs that lawyers handling medical malpractice cases cannot simply assume without investigation that the longer of the two potentially applicable limitations periods controls. Instead, they need make inquiry (or, perhaps, simply sue within two years of accrual).[12] See Gonzalez, 284 F.3d at 291 (noting that "[n]o evidence has been presented that [plaintiff] or her attorneys made any inquiry whatsoever as to the status of the defendants as federal employees."). As the Seventh Circuit recently explained,

> It's not asking too much of the medical malpractice bar to be aware of the existence of federally funded health centers that can be sued for malpractice only under the Federal Tort Claims Act . . . and if a member of that bar is not aware and misleads a client, . . . the lawyer may be liable for legal malpractice but the government can still invoke the statute of limitations.

Arteaga v. United States, 711 F.3d 828, 834-35 (7th Cir. 2013) (citations omitted).

---

[12] Massachusetts attorneys have added incentive to consider a two-year deadline. Massachusetts requires claims against it to be presented to the appropriate entity within two years of accrual, see Mass. Gen. Laws ch. 258, § 4, and does not toll that period simply because a plaintiff is unaware that their doctor may have been a public employee. See Krasnow v. Allen, 29 Mass. App. Ct. 562, 566-70 (1990).

Good lawyers, like good doctors, make mistakes. Mr. Sanchez's counsel either were unaware of the FTCA two-year deadline, or simply assumed without asking that none of the possible defendants were federal employees. Counsel do not say which it was. Given what otherwise appears to be a firm dedication to their client's case, one suspects it was the former. In any event, neither inaction born of ignorance nor recklessness in the face of a known risk could provide a basis for establishing diligence given the holding in Gonzalez. And "due diligence is a sine qua non for equitable tolling." Donahue v. United States, 634 F.3d 615, 629 (1st Cir. 2011).

Mr. Sanchez also argues that any inquiry regarding the employment status of the doctors would have been unavailing. He contends that LCHC never informed him of its federal status, that his wife's records did not reveal that the doctors were federal employees, and that the Department of Health and Human Services relied on internal records, not publicly available information, to certify the status of LCHC and the doctors for litigation purposes. The government contends that, if plaintiff had used it, a website and hotline for the U.S. Department of Health and Human Services, Health Resources and Services Administration would have adequately informed him that LCHC and its employees were federally funded and might be covered by the FTCA. As Mr. Sanchez notes, however, in 2009 and 2010, that website would not have informed him that the

-18-

specific doctors who treated his wife were deemed to be federal employees, and not every clinic that receives federal funds (or was listed on that website) was necessarily covered by section 233. In addition, we observe that the information regarding FTCA coverage and the hotline was hardly conspicuous on the site.

Even so, the information on the website, had counsel availed themselves of it, would certainly have put them on at least heightened inquiry notice regarding the treating doctors' deemed-federal status. Moreover, a Lexis or Westlaw search for Lynn Community Health Center would have revealed Harrison v. United States, 284 F.3d 293 (1st Cir. 2002), a 2002 FTCA medical malpractice case against another of LCHC's doctors. Simply put, no reasonably diligent lawyer who checked any of these sources of information would have let two years pass without doing much more.

Mr. Sanchez has also offered no evidence that a phone call or letter to LCHC inquiring about its (or its doctors') status would have been ignored, or would have generated a misleading response. We have examined the record for any indication that the doctors, LCHC, or the government gave plaintiff any false information or delayed unduly in answering important requests so as to thwart, intentionally or otherwise, efforts by plaintiff to ascertain whether this suit belonged in federal court. We have found none.

We agree that the federal government could do more to publicize or alleviate the statute of limitations trap created by section 233. Be that as it may, the absence of due diligence here is no less patent, and likely more so, than in Gonzalez. As we noted above, and as was not the case in Gonzalez, a doctor from LCHC had already been identified as a federal employee in an FTCA suit. Both Gonzalez and Harrison were decided in 2002, well before the events in question here. If, on these facts, we were to find the statutory deadlines tolled, then it would follow that Gonzalez was wrong.

Understandably, finding Gonzalez to be wrongly decided is precisely what plaintiff invites us to do. Departing from circuit precedent, however, can be justified only by "supervening authority" (such as a ruling of the Supreme Court or this Court en banc), Muskat v. United States, 554 F.3d 183, 189 (1st Cir. 2009), or "in those relatively rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." United States v. Pires, 642 F.3d 1, 9 (1st Cir. 2011) (citation and quotation marks omitted). The latter justification is narrowly construed, Igartúa v. United States, 626 F.3d 592, 603-04 (1st Cir. 2010), and imposes an "exacting standard," Sánchez ex rel. D.R.-S. v. United States, 671 F.3d 86, 96 (1st Cir.

2012); see also San Juan Cable LLC v. P.R. Tel. Co., Inc., 612 F.3d 25, 34 (1st Cir. 2010) (noting that the contrary conclusion of another circuit court does not "divest [a panel] opinion of its customary stare decisis effect within the circuit").

To suggest that the development of the law in other circuits, had it been known to the Gonzalez panel, would have caused it to change its collective mind, Mr. Sanchez relies on cases from two other circuits: Santos ex rel. Beato v. United States, 559 F.3d 189 (3d Cir. 2009), and Valdez ex rel. Donely v. United States, 518 F.3d 173 (2d Cir. 2008). Plaintiff is correct that these and subsequent cases from those two circuits reject the proposition that by failing to ask specifically about possible federal employment, counsel necessarily fail the due diligence test. Neither circuit, however, blesses complete inaction. In Santos, for example, counsel actually ran a public records search on the relevant doctors' employer. Santos, 559 F.3d at 200. In Phillips v. Generations Family Health Ctr., 723 F.3d 144 (2d Cir. 2013), the Second Circuit recently distinguished a case in which counsel did "literally nothing to investigate the defendant's status" and adopted an approach to equitable tolling that incorporates, among other factors, the prior knowledge and experience of counsel. Id. at 152-56. That approach runs the risk of effectively holding better, more knowledgeable practitioners to a higher standard of care. This seems a bit odd, but we need not

-21-

consider it further because Mr. Sanchez's counsel offers no significant evidence of their medical malpractice experience. More importantly, whether one views the approaches taken by those two circuits as appropriate or not, they hardly paint a picture of a rush to the exit so as to allow us to overrule our own controlling precedent here.

Statutes of limitations balance a desire to decide claims on their merits against a desire to provide repose and avoid the unfairness of litigating stale claims encumbered by faded memories. Under federal law, Congress strikes the chosen balance, leaving perhaps some room for equitable dispensation where due diligence could not have saved a claim. Here, with no good explanation for the complete failure to try to ascertain which limitations period applied, no pertinent precedent allows the individual dispensation requested. We note, however, that while Mr. Sanchez has thus lost his claim against his wife's doctors, he may not have yet lost altogether his chance to recover full compensation for that loss from any professionals responsible for the effects of the judgment in this case.

## IV. Conclusion

For these reasons, the judgment of the district court is <u>affirmed</u>.