# United States Court of Appeals
## For the First Circuit

No. 16-2025

PETER CAMERANO,
Personal Representative of the Estate of Patrick Camerano,

Plaintiff, Appellant,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Torruella, Selya, Kayatta,
Circuit Judges.

Daniel C. Federico and Shaines & McEachern, PA on brief for
appellant.
Rayford A. Farquhar, Assistant United States Attorney, and
Carmen M. Ortiz, United States Attorney, on brief for appellee.

April 19, 2017

**KAYATTA**, **Circuit Judge**.  Plaintiff is the son of the late Patrick Camerano and the personal representative of Patrick's estate.  This lawsuit arises out of Patrick's death, which resulted from a fall he suffered while on a "respite/nursing stay" at a facility operated by East Boston Neighborhood Health Center ("EBNHC") at 26 Sturgis Street in Winthrop, Massachusetts.

The underlying facts of this case are detailed in the district court's published opinion.  See Camerano v. United States, 196 F. Supp. 3d 172, 175–76 (D. Mass. 2016).  In summary, the chronology of relevant events is as follows:

- **February 24, 2012:**  When Patrick's second son, Paul-- who lived in the same apartment building as Patrick-- has to travel to Florida, EBNHC arranges for Patrick to stay temporarily at its Winthrop facility.

- **February 26, 2012:**  At approximately three o'clock in the morning, Patrick suffers a fall in the hallway of the Winthrop facility.  No witnesses observe Patrick's fall.

- **February 27, 2012:**  Patrick begins to display signs of distress and is hospitalized at Boston Medical Center.

- **February 28, 2012:**  Plaintiff receives a phone call from an EBNHC nurse, who advises him that Patrick has been involved in an accident and sent to the hospital.  Upon further inquiry, the nurse tells plaintiff that Patrick has fallen, but that she is "not totally sure."

- **February 29, 2012:**  Patrick is moved to hospice care.

- **March 1, 2012:**  Patrick passes away.

- **May 27, 2012:**  The Commonwealth of Massachusetts issues Patrick's death certificate.  The document specifies that he died due to a "subdural hemorrhage" that resulted

from an "unwitnessed fall" at a "respite facility" located at "26 Sturgis Street, Winthrop, MA."

- **June 2012:** Plaintiff requests Patrick's medical records from EBNHC, and receives some, but not all, records. (He says now that he made this request because he did "not know[] where [his] father was when he was injured.")

- **August 29, 2012:** Plaintiff files a voluntary administration statement with the Massachusetts Probate and Family Court. The form lists as an asset a "[w]rongful death action regarding [a] nursing home facility."

- **October 29, 2012:** Plaintiff and his attorney obtain an additional set of Patrick's medical records. (Plaintiff's brief alleges that "the location and the proximate cause of the injury . . . were not reasonably discoverable until" he received these records.)

- **March 5, 2014:** Plaintiff's attorney sends a letter to EBNHC, stating plaintiff's "inten[tion] to file a claim for damages."

- **May 15, 2014:** Plaintiff's attorney sends a letter styled as a "Claim" to the United States Department of Health and Human Services ("HHS"), alleging state common law and federal statutory violations and seeking unspecified damages.

- **July 16, 2014:** Plaintiff's attorney submits a standard claim form to HHS, seeking $1,700,000 in damages for Patrick's alleged wrongful death.

As the district court noted in granting summary judgment to the government, the problem for plaintiff is that he has not submitted any evidence disputing that EBNHC is a federal entity under the purview of the United States Public Health Service. As such, plaintiff's tort claims against EBNHC are considered tort claims against the United States, see 42 U.S.C. § 233(g), and any "tort claim against the United States shall be forever barred

- 3 -

unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues," 28 U.S.C. § 2401(b). As the chronology reflects, plaintiff did not file his administrative complaint with HHS until more than two years after learning that his father had suffered a fatal injury caused by an unwitnessed fall.[1]

Plaintiff argues nevertheless that his claim did not accrue until October 29, 2012, when his newly retained counsel was able to ascertain "the name of the respite/nursing home where his late father's accident happened." Alternatively, he argues that the two-year limitations period should be equitably tolled until that date because of the government's alleged fraudulent concealment of "the location and possible causes of the accidental fall."

The district court's opinion cogently explains why these arguments fail. See Camerano, 196 F. Supp. 3d at 177–81. We affirm largely on the basis of that explanation. In brief, there is no evidence that EBNHC deliberately concealed any material facts that were needed to put plaintiff on notice of the fact and cause

---

[1] Both plaintiff's original complaint and his amended complaint specify July 16, 2014, as the operative filing date, presumably because he submitted the relevant claim form to HHS on or around this date, and because his earlier filings failed to provide sufficient notice to HHS, see Holloway v. United States, 845 F.3d 487, 489 (1st Cir. 2017) (citing 28 C.F.R. § 14.2(a)). On appeal, plaintiff does not argue that we should consider any date other than July 16, 2014, as the operative filing date.

of his father's injury.  See Callahan v. United States, 426 F.3d 444, 454 (1st Cir. 2005).  Further, no reasonable jury could find that plaintiff did not know enough about his father's injury at least to investigate further by March 1, 2012--and certainly by May 27, 2012, when the death certificate was issued.  See Sanchez v. United States, 740 F.3d 47, 52 (1st Cir. 2014).  And given that plaintiff has not submitted any evidence disputing that this case involves employees of the United States Public Health Service acting within the scope of their employment, 42 U.S.C. § 1983 does not provide a remedy for plaintiff's alleged injuries even if, as plaintiff argues, those employees violated the Nursing Home Reform Act, 42 U.S.C. §§ 1396r–1396r-8.  See id. § 233(g) (establishing the "[e]xclusivity" of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, as a remedy for actions such as this one); McCloskey v. Mueller, 446 F.3d 262, 271 (1st Cir. 2006) ("[T]o plead a viable section 1983 claim, a complaint must allege action under color of state law." (emphasis added)); see also Casey v. Dep't of Health & Human Servs., 807 F.3d 395, 400–01 (1st Cir. 2015) (noting that "the federal analog to § 1983 suits against state officials," id. at 398 n.1, is available to redress only a "limited" range of constitutional violations).[2]

---

[2] The district court's correct dismissal of plaintiff's § 1983 claim thus moots the question of whether plaintiff should have been granted leave to add another defendant to that claim.

We add only the following comments in response to several points that plaintiff emphasizes in his brief. First, plaintiff's argument that the running of the limitations period should be deemed to have been stayed until he retained counsel has no support in the law. Certainly, we do not expect a layperson to know what statutes of limitations apply. And in most cases some portion of the relevant limitations period will run before counsel is retained. That is likely one reason why such periods are not shorter. Any counsel competent to handle a malpractice claim against a nursing or health care facility presumably knows that various statutes of limitations exist, and that the correct one need be identified if not already known. See Sanchez, 740 F.3d at 54-56. If plaintiff's own lawyer did not tell him about the two-year limitations period applicable here, then that may well provide plaintiff with cause to complain. The proper object of such a complaint, however, would be counsel, not EBNHC or the federal government.

Second, plaintiff's statement in his affidavit that records produced by the hospital in June of 2012 were incomplete fails to get him anywhere because he offers no explanation as to how the incompleteness prejudiced him in any material way. Plaintiff alleges no facts making it plausible that the hospital lulled him into thinking that he had no viable claim. To the contrary, after receiving the records, plaintiff executed an

- 6 -

estate-administration form that listed the "wrongful death action regarding [a] nursing home facility" as an asset of the estate. He claims that the records that EBNHC provided him prior to October 29, 2012, did not reveal the name of the relevant facility. But he already knew the address from the death certificate. That he also fails to allege that he ever asked about the name of the facility erects yet another impediment to any plausible contention that EBNHC, by its silence, misled him about the location at which his father was injured.

We also decline to find that the district court committed procedural error in granting summary judgment to the government. Contrary to plaintiff's assertions otherwise, the government's memorandum in support of its motion to dismiss contains a section entitled "Introduction and Undisputed Facts," which cites plaintiff's own complaints as well as various attached exhibits. Nor do we find error in the district court's finding that the address of "26 Sturgis Street, Winthrop, MA" was "EBNHC's address." The district court was not saying that plaintiff knew that fact. Rather, the district court was correctly saying that, armed with the death certificate, plaintiff could have "readily" ascertained the location at which his father's injury occurred. See Gonzalez v. United States, 284 F.3d 281, 289 (1st Cir. 2002) (noting that the existence of a possible claim was not "inherently incapable of detection . . . through the exercise of reasonable diligence").

Finally, plaintiff's claim that he was entitled to prejudgment discovery is defeated by his acquiescence to the district court's conversion of the government's motion to dismiss into a motion for summary judgment. See Fed. R. Civ. P. 12(d). Nor did plaintiff claim in the district court that he lacked the opportunity to rebut the government's timeliness argument in his opposition memorandum. The key issues, after all, were what plaintiff knew and when he knew it. Thus, we cannot say that plaintiff did not have "reasonable opportunity to present all material made pertinent to such a motion" or that conversion was otherwise a "surprise" or "unfair." See Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008).

To be sure, it is unfortunate when a potentially important claim is lost because a deadline is missed. However, that is the necessary result of the statutory limitations periods that our elected representatives have seen fit to enact, without which there would be no repose and claims might be filed long after the ability to recreate what happened has much diminished. Plaintiff is a layperson who suspected that he might have a valid claim arising out of his father's death. Based on what he knew, the law anticipates that he would do what he did in fact do: promptly consult a lawyer. Plaintiff's knowledge of his father's injury, combined with what his lawyer should have known about how to investigate and preserve any potential claims arising from that

injury, left him well able to file the appropriate claim form with HHS within the two-year limitations period established by Congress. That he did not do so is not the fault of EBNHC or the government.

For the foregoing reasons, we <u>affirm</u>.