# United States Court of Appeals
## For the First Circuit

No. 16-2064

LUZ Z. MORALES-MELECIO; MARÍA I. MARTÍNEZ-ORTIZ;
EMILIO MATOS-PÉREZ; MARIELA MATOS-MARTÍNEZ,

Plaintiffs, Appellants,

v.

UNITED STATES (Department of Health and Human Services),

Defendant/Third-Party Plaintiff, Appellee,

v.

EMERGENCY PRACTICE MANAGEMENT, P.S.C.; HOSPITAL
UNIVERSITARIO DR. RAMÓN RUIZ ARNAU; DR. LUIS E. MEJÍAS-
BETANCOURT; DR. RICARDO ROSARIO-MENDOZA; DR. MINELY
MARTÍNEZ-VELÁSQUEZ; DR. LUIS RODRÍGUEZ-ROSELLÓ,

Third-Party Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. Senior District Judge]

Before

Torruella, Lipez, and Kayatta,
Circuit Judges.

José F. Velázquez-Ortiz and Velázquez Law Offices, PSC on
brief for appellants.
John A. Mathews II, Assistant United States Attorney, Rosa
Emilia Rodríguez-Vélez, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate
Division, on brief for appellee.

May 21, 2018

**TORRUELLA**, **Circuit Judge**.  This case once again calls for this Court to determine the accrual date of a claim arising under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, and the potential application of the so-called "discovery rule."

**I.**

On March 1, 2010, Emilio Matos-Martínez ("Matos") died at the Puerto Rico Medical Center ("PRMC") after having been diagnosed with septic shock and multiple organ failure, and suffering two cardiorespiratory attacks.  Prior to his death at PRMC, Matos was treated at two other medical facilities on February 27 and February 28, 2010.  At some point after Matos's death, Matos's parents, sister, and daughter (collectively, "Appellants") became aware that the first medical facility at which Matos was treated was a federally supported entity.  Appellants filed an administrative claim with the United States Department of Health and Human Services ("USDHHS" or the "government") on April 16, 2012, followed by a medical malpractice complaint pursuant to the FTCA against USDHHS in the district court on April 22, 2013. The district court granted summary judgment in favor of the government, holding that Appellants' claims were time-barred for failing to file compulsory administrative claims within the FTCA's two-year statute of limitations.  See 28 U.S.C. § 2401(b).

-3-

Appellants now appeal the dismissal of their complaint, arguing that their FTCA claims did not begin to accrue until they received Matos's autopsy report on July 28, 2010. After careful review of the record, we agree with the district court that Appellants' claims are time-barred. We therefore affirm.

**II.**

The facts are largely undisputed.[1] On February 27, 2010, at 4:55 p.m., Matos, a thirty-six year old man weighing 370 pounds[2] with a history of hypertension, arrived at Salud Integral en la Montaña, Inc. ("SIM"), a health center located in Naranjito, Puerto Rico, complaining of abdominal pain that had persisted for five days, constipation, and fever. SIM is a covered entity under the Federally Supported Health Centers Assistance Act of 1995, Pub. L. 104-73, 109 Stat. 777 (codified at 42 U.S.C. § 233). After triaging Matos, a resident nurse at SIM determined that his condition was such that he needed to be promptly evaluated by a

---

[1] Appellants state that the district court "made a partial, however good synthesis of some of the undisputed material facts in this case," and point to several facts not contained within the district court's analysis. None of these purportedly omitted facts are material to our determination of the accrual date of Appellants' action.

[2] Appellants and the government both assert that Matos weighed 330 pounds, a fact that the district court seems to have adopted. However, an autopsy report shows that Matos weighed 370 pounds when he died. This distinction, too, has no effect on this Court's analysis.

-4-

doctor.   After the duty physician, Dr. María Román-Bruno ("Dr. Román"), conducted a cursory examination of Matos that did not involve x-rays, laboratory tests, or other imaging, she diagnosed Matos with "abdominal pain" and prescribed him Maalox and Enulose for his constipation,[3] and Bentyl for his abdominal pain.[4]  Dr. Román then discharged Matos and instructed him to see his primary doctor in two days.

The next day, Matos's sister, Mariela Matos, took Matos to the Hospital Universitario Ramón Ruiz-Arnau ("HURRA"), a regional hospital in Bayamón, because his symptoms had worsened overnight.  Upon arrival, Matos was diagnosed with abdominal pain, dehydration, and hematuria.[5]  Medical tests revealed that Matos had a bowel obstruction, which prompted the emergency room physician to request a surgical evaluation.  However, the head of HURRA's surgery department, Dr. Ricardo Rosario ("Dr. Rosario"), refused to evaluate Matos because he believed that the surgical tables at the hospital would not support Matos's weight.[6]  Due to

---

[3]  Maalox is an antacid.  Enulose is a laxative.

[4]  According to Dr. Román's testimony, Bentyl is used in small amounts to "alleviate abdominal pain."

[5]  Hematuria is the medical term for blood in the urine.

[6]  In his deposition, Dr. Rosario denied that he had ever refused to partake in a consultation because of a patient's weight. Matos's medical progress note, however, indicates otherwise.

HURRA's inability to properly evaluate Matos, the staff at HURRA attempted to transfer Matos to another medical facility but was unable to do so until the next day.

On March 1, 2010, Matos was transferred to the PRMC where he was diagnosed with septic shock and multiple organ failure. Shortly thereafter, Matos suffered two consecutive cardiac arrests and, at 4:15 p.m., was declared dead. Immediately after Matos's death, a PRMC physician appears to have informed his father, Emilio Matos-Pérez, that Matos died of a heart attack. That same day, Matos's mother, María Martínez-Ortiz ("Martínez"), authorized PRMC to perform an autopsy of Matos's body. The autopsy was performed on March 2, 2010.

On March 6, 2010, Matos's body was cremated. Two days later, Martínez was given Matos's ashes along with a copy of his death certificate. The death certificate listed Matos's immediate cause of death as "septic shock, secondary to peritonitis, secondary to intestinal perforation." On May 26, 2010, Martínez requested a certified copy of Matos's complete PRMC medical file. She received the file, along with the final autopsy report, on July 28, 2010. The autopsy report matched the death certificate findings as to the septic shock and the peritonitis.[7] However,

---

[7] Specifically, the final autopsy report listed the following under its final pathologic diagnosis: (1) Septic Shock; (2) Morbid obesity; (3) Congestive Heart Failure; and, (4) Renal Failure.

-6-

rather than listing "intestinal perforation," the autopsy report went into further detail about Matos's torn intestine, listing "diverticulitis, perforated with peritonitis with abscess formation." The narrative section of the autopsy report labeled "Laboratory Findings" reads that "[a]n intestinal perforation in the Colon at 192 cm from the ileo-cecal valve (distal portion) measuring 0.5 cm corresponded to a diverticuli (Sigmoid Colon)." At an unidentified time after obtaining possession of the medical file, Appellants hired an attorney to explore their legal options.

On March 16, 2011, Appellants filed a medical malpractice suit in the Puerto Rico Court of First Instance against SIM, HURRA, and several physicians, alleging the wrongful death of Matos. On June 30, 2011, Appellants voluntarily dismissed their state court lawsuit. At some point thereafter, Appellants became aware that SIM was a federally covered entity and, on April 16, 2012, they filed an administrative claim with the USDHHS.[8] While that administrative claim was still pending, on April 22, 2013, Appellants filed this FTCA medical malpractice claim against the USDHHS, as the representative of SIM and Dr. Román (as SIM's

_____

Each diagnosis is further detailed in the autopsy report.

[8] In their complaint, Appellants asserted that they filed their administrative claim on April 9, 2012. Both parties on appeal acknowledge that the administrative claim was filed on April 16, 2012.

-7-

agent), seeking compensatory damages for their own suffering as a result of Matos's death. In the same complaint, Matos's minor daughter, Z.M.M., as heir of her deceased father, also asserted an inherited action for Matos's pain and suffering before his death as a result of the alleged medical malpractice.[9] The government brought a third-party complaint against HURRA and several physicians that cared for or evaluated Matos in the events leading up to his death, seeking to add them as additional parties to the lawsuit. On May 3, 2013, the USDHHS denied the administrative claims against SIM.

After discovery was complete in the district court, Appellants filed a motion for partial summary judgment on November 27, 2015, claiming there was no factual dispute as to the negligence of the government's agent. On November 30, 2015, the government filed its own motion for summary judgment, positing

---

[9] While a tort claim under the FTCA substantively follows state law liability, its statute of limitations provisions are governed by federal law, not state law. Domínguez v. United States, 799 F.3d 151, 154 (1st Cir. 2015). Therefore, state law tolling statutes do not apply to the FTCA statute of limitations. See, e.g., Santos ex. rel. Beato v. United States, 559 F.3d 189, 193 (3d Cir. 2009); Arteaga v. United States, 711 F.3d 828, 830 (7th Cir. 2013). Unlike Puerto Rico tort claims, for which the statute of limitations governing both personal and inherited tort actions by minors are suspended until the minor becomes of legal age, De Jesús v. Chardón, 16 P.R. Offic. Trans. 290, 308-09 (1985), the FTCA includes no such tolling provision, see 28 U.S.C. §§ 2401(b), 2671-2680. Thus, we treat Z.M.M.'s claims in the same manner as those of the remaining Appellants.

that the Appellants' claims were barred by their failure to file an administrative claim within two years after their causes of action accrued, as mandated by 28 U.S.C. § 2401(b). Appellants countered that there was undisputed evidence that Matos's diverticulitis triggered his death, and that they could not have known of that evidence and possibly connected Matos's death to any governmental malfeasance until they received the autopsy report on July 28, 2010. Therefore, Appellants asserted, under the "discovery rule," they had until July 28, 2012, to file their federal claim, and, because their administrative claim was filed before that, their claim was timely.

The district court agreed with the government, holding that by March 1, 2010, Appellants had sufficient knowledge as to the probable cause of Matos's death such that the statute of limitations began to run that same day. As Appellants had not filed their administrative claims until April 16, 2012,[10] the district court dismissed Appellants' claims with prejudice on June 6, 2016. Appellants filed a motion to reconsider on June 10,

---

[10] In its opinion and order, the district court used April 15, 2012, as the date on which Appellants filed their administrative motion. As previously noted, both parties agree on appeal that the administrative claim was filed on April 16, 2012. See supra note 8.

2016, which the district court denied on August 3, 2016. Appellants timely appealed.

## III.

It is axiomatic that, absent an explicit waiver, the United States is safeguarded from suit in any court in accordance with its sovereign immunity. FDIC v. Meyer, 510 U.S. 471, 475 (1994). The FTCA constitutes a limited waiver of that sovereign immunity, allowing, in relevant part, for damages claims to be brought against the United States for any "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). One limitation of this waiver, however, requires that "[a] tort claim against the United States . . . is presented in writing to the appropriate Federal agency within two years after such claim accrues," otherwise that claim is "forever barred." Id. § 2401(b).[11] "[I]n construing the statute of limitations . . .

---

[11] Congress passed the Westfall Act of 1988, Pub. L. No. 100-694, 102 Stat. 4563, which amended the FTCA to require that "any civil action or proceeding commenced upon such claim in a State court shall be removed . . . to the district court of the United States . . . . Such action or proceeding shall be deemed to be an action or proceeding brought against the United States . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(2). Further,

> Whenever an action or proceeding in which the United States is substituted as the party defendant under

-10-

we should not take it upon ourselves to extend the waiver beyond that which Congress intended," United States v. Kubrick, 444 U.S. 111, 117-18 (1979), nor "should we assume the authority to narrow the waiver," id. (citing Indian Towing Co. v. United States, 350 U.S. 61, 68-69 (1955)).

This Court had long interpreted the timely filing of an administrative claim pursuant to § 2401(b) as a jurisdictional prerequisite to vesting the district court with subject matter jurisdiction over an FTCA suit against the United States. See Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003); González

this subsection is dismissed for failure first to present a claim pursuant to section 2675(a) of this title [requiring that an administrative claim be first filed], such a claim shall be deemed to be timely presented under section 2401(b) of this title if --

(A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and

(B) the claim is presented to the Federal agency within 60 days after the dismissal of the civil action.

Id. § 2679(d)(5). Here, Appellants filed a medical malpractice suit against SIM and others in Puerto Rico court on March 16, 2011, which they voluntarily dismissed on June 30, 2011. Appellants neither state that their local claims were brought pursuant to the FTCA nor that the United States was substituted as the party defendant. Further, Appellants acknowledge that they did not file a claim with the USDHHS within sixty days of their voluntarily dismissal of that local suit. Accordingly, § 2679(d)(5) provides no protection to Appellants' claims, and they make no argument otherwise.

-11-

v. United States, 284 F.3d 281, 288 (1st Cir. 2002); Attallah v. United States, 955 F.2d 776, 779 (1st Cir. 1992); González-Bernal v. United States, 907 F.2d 246, 248 (1st Cir. 1990).  However, in 2015, the Supreme Court clarified that the FTCA's statute of limitations is nonjurisdictional.  United States v. Kwai Fun Wong, 135 S. Ct. 1625, 1638 (2015).  Given the nonjurisdictional nature of § 2401(b), we must now view the FTCA's statute of limitations as an affirmative defense to be asserted by the defendant.  See Skwira, 344 F.3d at 71 n.8 (citing Hughes v. United States, 263 F.3d 272, 278 (3d Cir. 2001), for the proposition that other pre-Kwai-Fun Wong cases considered the FTCA's statute of limitations to be a nonjurisdictional affirmative defense asserted by the defendant); see also Trinity Marine Prod., Inc. v. United States, 812 F.3d 481, 486 (5th Cir. 2016); Fed. R. Civ. P. 8(c)(1); cf. Midland Funding, LLC v. Johnson, 137 S. Ct. 1407, 1417-18 (2017) (stating that, in ordinary civil cases the statute of limitations is an affirmative defense); Weil v. Elliot, 859 F.3d 812, 815 (9th Cir. 2017) (finding in the bankruptcy context that "[a] non-jurisdictional time bar is an affirmative defense that may be forfeited if not timely raised").  Here, the government repeatedly raised the statute of limitations in its motion to dismiss filed on August 1, 2013, in the "Affirmative Defenses"

-12-

section of its answer to Appellants' complaint filed on February 3, 2014, and again in its motion for summary judgment.

Ultimately, the district court resolved the dispute on summary judgment. We take this opportunity to note that, post-Kwai Fun Wong, motions to dismiss based on the FTCA's statute of limitations should now be brought under Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim upon which relief can be granted), or considered pursuant to Rule 56 (summary judgment). See Trinity Marine Prod., Inc., 812 F.3d at 486 ("[T]he district court should have considered the Government's motion to dismiss under Rule 12(b)(6) rather than 12(b)(1)."); see also Holloway v. United States, 845 F.3d 487, 489 (1st Cir. 2017) (acknowledging post-Kwai Fun Wong that the magistrate judge treated the Government's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction as one for summary judgment); Torres v. United States, 612 F. App'x 37, 39 (2d Cir. 2015) (unpublished) (affirming the district court's dismissal under Rule 12(b)(1) but noting that "the district court's order is technically incorrect, insofar as the dismissal should be for failure to state a claim, not for lack of jurisdiction").

As the district court properly analyzed this claim utilizing the appropriate summary judgment test, "[w]e review the district court's decision to grant defendant's motion for summary

judgment on statute of limitations grounds de novo, construing the record in the light most favorable to the non-moving party." Rodríguez v. Suzuki Motor Corp., 570 F.3d 402, 405-6 (1st Cir. 2009) (citation omitted). The district court's decision will be affirmed if, "based on our independent review of the evidentiary record, there is no genuine issue of material fact and the undisputed facts indicate that the moving party is entitled to judgment as a matter of law." Id. at 406. However, summary judgment is improper when the "record is sufficiently open-ended to permit a rational factfinder to resolve a material factual dispute in favor of either side." Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014).

## IV.

In general, a tort claim under the FTCA accrues when a plaintiff is injured. Ramírez-Carlo v. United States, 496 F.3d 41, 46 (1st Cir. 2007). Both parties agree that the date of injury in question, Matos's death, was March 1, 2010. But, under the Supreme Court's "discovery rule" exception for FTCA claims, the statute of limitations clock does not begin to run until the putative plaintiff knows of the factual basis of both his injury and its cause. Kubrick, 444 U.S. at 119-22; see also Nicolazzo v. United States, 786 F.2d 454, 455 (1st Cir. 1986). The Court explained that two major concerns necessitated this rule:

-14-

> One is the fact that . . . since many of the consequences of medical malpractice often do not become apparent for a period longer than that of the statute [of limitations], the injured plaintiff is left without a remedy. The second reason is that the nature of the tort itself and the character of the injury will frequently prevent knowledge of what is wrong, so that the plaintiff is forced to rely upon what he is told by the physician or surgeon.

Kubrick, 444 U.S. at 120 n.7 (quoting Restatement (Second) of Torts § 899 cmt. e (1979)). Once aware of the probable cause and existence of the injury, that putative medical malpractice plaintiff bears the burden of seeking further advice from the medical and legal communities to decide whether he has a viable cause of action. See Ramírez-Carlo, 496 F.3d at 47 (citing Callahan v. United States, 426 F.3d 444, 451 (1st Cir. 2005)); see also Sánchez v. United States, 740 F.3d 47, 52 (1st Cir. 2014); Skwira, 344 F.3d at 76. "Knowing the cause and existence of an injury is not the same as knowing that a legal right has been violated." Motley v. United States, 295 F.3d 820, 822 (8th Cir. 2002).

**V.**

Appellants contend that their claims did not accrue until July 28, 2010, the date that they received the autopsy report. Unlike the death certificate, they assert that the autopsy report revealed that the "most significant" cause of Matos's death was diverticulitis, which a reasonable person could not have known

-15-

on the day that he died. Therefore, Appellants allege that they "became aware that the patient's death was possibly caused by mistreatment of his condition . . . only after the issuance on July 28, 2010[,] of the PRMC medical records with the autopsy report that revealed [Matos's] diverticulitis disease." Thus, the clock to file their FTCA claims should not have expired until July 28, 2012, rendering timely their administrative claims filed on April 16, 2012. Further, Appellants assert that PRMC's "extreme delay" in providing the autopsy report precluded them from learning the factual basis to assert their causes of action any earlier, and that, prior to receiving it, no one could have anticipated any litigation resulting from Matos's death. We disagree.

The court employs an objective standard to determine whether a plaintiff knew of sufficient facts for his action to accrue, contemplating "whether a reasonable person similarly situated to the plaintiff would have known the necessary facts," or reasonably could have obtained sufficient facts through the exercise of reasonable diligence. Cascone v. United States, 370 F.3d 95, 104 (1st Cir. 2004) (emphasis omitted) (citing McIntyre v. United States, 367 F.3d 38, 60 (1st Cir. 2004)); see also Skwira, 344 F.3d at 81-82. This Court has clarified that a plaintiff need not know the "full extent of the injury," González, 284 F.3d at 289 (citing Marrapese v. Rhode Island, 749 F.2d 934,

940 n.10 (1st Cir. 1984)), "or that it was negligently inflicted," id. (citing Kubrick, 444 U.S. at 124), in order for the statute of limitations to begin to run.  Further, "definitive knowledge of the cause of injury is not required to trigger the accrual of a medical malpractice claim."  Skwira, 344 F.3d at 78 (citing Kubrick, 444 U.S. at 118); see also Callahan, 426 F.3d at 451.  A plaintiff need only be aware of his injury and the facts establishing the probable cause of the injury for the claim to accrue.  See Kubrick, 444 U.S. at 118; see also González, 284 F.3d at 289.  While knowing the factual basis of the cause of action includes knowing "the identity of the part[y] that caused the injury," McIntyre, 367 F.3d at 52, "knowledge of the legal status of the physician as a federal employee is not required for claim accrual," Skwira, 344 F.3d at 76.

Applying these principles, we find that, at least by March 8, 2010, when Appellants received Matos's death certificate, they knew of sufficient facts to raise an alarm in a reasonable person that the probable cause of Matos's death was connected to the defendants' treatment (or failure to provide treatment) of Matos's medical condition.  Upon receipt of Matos's death certificate, Appellants were aware that Matos had experienced five days of abdominal pain, constipation, and fever by the time that he arrived at SIM on February 27, 2010; that a nurse at SIM deemed

-17-

his condition to be "urgent"; and that Dr. Román simply diagnosed him with "abdominal pain" and prescribed him a laxative, an antacid, and a pain reliever without ordering any laboratory tests or x-rays. Appellants were also aware that after Dr. Román discharged Matos, his condition worsened overnight, prompting his family to take him to HURRA, where medical tests revealed a bowel obstruction that required a surgical evaluation. Additionally, Appellants knew that after HURRA transferred Matos to PRMC on March 1, 2010, less than two days after SIM discharged him, Matos was diagnosed with septic shock, multiple organ failure, and suffered two consecutive cardiac arrests ultimately resulting in his death. Finally, upon receiving the death certificate on March 8, 2010, Appellants were aware of Matos's direct, medical cause of death: septic shock, caused by peritonitis, which itself was caused by a perforated intestine. The knowledge of these vital facts was more than sufficient to trigger Appellants' burden to inquire amongst the relevant medical and legal communities as to whether there was a causal connection between SIM's lack of treatment and Matos's death, and whether Appellants had a viable cause of action. See Kubrick, 444 U.S. at 124; González, 284 F.3d at 290.

The essence of Appellants' argument is that they could not have known that the defendants may have committed malpractice by missing Matos's diverticulitis until they received the autopsy

-18-

report.  But, as Appellants themselves acknowledge in their opening brief, the "FTCA two year limitation period allows a plaintiff to investigate, [and to] confer [with] medical professionals for the purpose of assessing whether there has been negligence and decide whether to sue." (emphasis added).  The FTCA statute of limitations does not wait until a plaintiff knows that the challenged action legally constitutes medical malpractice.  Cascone, 370 F.3d at 104; see also Skwira, 344 F.3d at 75-76.  Nor does the claim wait to accrue while a malpractice plaintiff gathers medical reports when that plaintiff already has in his possession the critical information necessary to ascertain the probable cause of the relevant injury.  See Sánchez, 740 F.3d at 53 (citing T.L. ex rel. Ingram v. United States, 443 F.3d 956, 964-65 (8th Cir. 2006)) (finding that delay in obtaining medical reports did not toll limitations period where plaintiff failed to show "how their absence precluded him from timely filing his claim").  While the autopsy report further detailed that the "intestinal perforation" was a torn diverticula in Matos's colon, the information contained in Matos's death certificate -- coupled with Appellants' knowledge of Matos's treatment at SIM and HURRA -- was more than sufficient to trigger Appellants' duty to investigate.  See Rotella v. Wood, 528 U.S. 549, 555-56 (2000) ("A person suffering from inadequate treatment is thus responsible for determining within the

-19-

limitations period then running whether the inadequacy was malpractice.").

Appellants further contend that, in light of Matos's morbid obesity and hypertension, it was unreasonable for the district court to require them to know the cause of Matos's death before they received the autopsy report. Appellants state that, unlike in Sánchez, in which the court found that "[t]he death of a generally healthy woman in childbirth is sufficiently rare in this country today as to make most reasonable people ask why it happened," 740 F.3d at 52, a reasonable person would not have questioned why an unhealthy person, such as Matos, died, especially given the frequency with which hospitalized patients die of sepsis.[12] It was only when they learned that Matos suffered from diverticulitis, uncommon in a man of his age,[13] that Appellants believe a reasonable person would have questioned whether malpractice occurred.

---

[12] Appellants point to several studies, including one from an agency within the USDHHS, to support their contention that septicemia is both a common and deadly disease.

[13] In support of this argument, Appellants cite a 2014 research paper from the undergraduate Radiographic Science program at Idaho State University. Chris Van Orden, Diverticulitis, Idaho State Univ., http://www2.isu.edu/radsci/papers14/18_2014.pdf (last visited April 9, 2018).

This argument, however, ignores the full scope of the information provided in Matos's death certificate, as well as the timing of Matos's death. The death certificate provided to Appellants on March 8, 2010, listed not only that Matos died of sepsis, but that the sepsis was secondary to peritonitis, which was secondary to intestinal perforation. Even if we were to assume that knowledge that Matos died of septic shock, without more, was insufficient to trigger Appellants' duty to investigate, in this case they were armed with far more to raise their suspicions. They knew the symptoms that Matos suffered (severe abdominal pain, constipation, and fever), the treatment given (or, more precisely, not given), and the direct, medical cause of death (septic shock, secondary to peritonitis, secondary to intestinal perforation). Appellants also knew that this resulted in Matos's death only two days after Dr. Román diagnosed him with "abdominal pain" and discharged him within approximately two hours and forty minutes of his arrival at SIM. Appellants had sufficient information[14] to require them to begin to investigate their claims, and could have "file[d] an administrative claim and preserve[d their] rights

---

[14] Appellants' inclusion of the fact that, on the day of Matos's death, "an unidentified doctor told family members that Mr. Matos ha[d] died due to a heart attack," provides no support for their claim. It is undisputed that Appellants received a copy of Matos's death certificate, informing them of the information described above, on March 8, 2010.

under the FTCA" within the two-year statute of limitations ending, at the latest, on March 8, 2012.  <u>Skwira</u>, 344 F.3d at 81.

**VI.**

Despite the tragic death of their loved one, we unfortunately must conclude -- like the district court before us -- that Appellants' action seeking compensatory damages for the allegedly negligent act of a federal employee is time-barred under the FTCA's statute of limitations.

**<u>Affirmed</u>.**