# United States Court of Appeals
## For the First Circuit

No. 22-1014

BRAD O'BRIEN, Personal Representative of the Estate of Melissa Allen,

Plaintiff, Appellant,

v.

UNITED STATES ET AL.,

Defendants, Appellees,

FERNANDO ROCA, MD,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch and Selya, Circuit Judges,
and McElroy,[*] District Judge.

Adam R. Satin, with whom Andrew C. Meyer, Jr. and Lubin & Meyer, P.C. were on brief, for appellant.
Dana Kaersvang, Trial Attorney, Civil Division, United States Department of Justice, with whom Rachael S. Rollins, United States Attorney, and Erin E. Brizius, Assistant United States Attorney, were on brief, for appellee United States.

_____

[*] Of the District of Rhode Island, sitting by designation.

December 19, 2022

**SELYA**, **Circuit Judge**.    In this case, the plaintiff brought a wrongful death action in state court.  He alleged medical malpractice against (inter alia) a physician who worked for a federally funded health center.   The patient (the plaintiff's decedent) was unaffiliated with the health center.   The United States removed the action to federal court and sought to substitute itself as a defendant in the physician's place and stead.   To justify removal and substitution, the United States invited the district court to invoke the provisions of the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the Westfall Act),  28  U.S.C.  § 2679.    The  district  court  accepted  the government's invitation, invoked the Westfall Act, substituted the United States for the physician, and subsequently granted the government's motion to dismiss the plaintiff's amended complaint for failure to state a claim upon which relief could be granted.

The plaintiff appealed.  In this court, the government conceded it had led the district court into a dead end:  it repudiated its earlier reliance on the Westfall Act and, instead, attempted to salvage the substitution order under a provision of the Public Health Service Act (PHSA), 42 U.S.C. § 233.  This shift in direction brought new issues into play and left gaps in the evidentiary record.   Those gaps must be filled by further proceedings in the district court, which can then resolve the new issues that have emerged as a result of the government's about-

- 3 -

face.  We therefore vacate the substitution order, vacate the partial final judgment entered below, and remand to the district court for further proceedings consistent with this opinion.

## I

We begin with the relevant facts.  Because this appeal follows the allowance of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we draw those facts from the plaintiff's amended complaint and other materials in the record that may be considered at the motion-to-dismiss stage.  See Aguilar v. U.S. Immigr. & Customs Enf't, 510 F.3d 1, 8 (1st Cir. 2007); Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.), 324 F.3d 12, 14-16 (1st Cir. 2003); Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998).

## A

Plaintiff-appellant Brad O'Brien is the surviving partner of Melissa Allen and the personal representative of her estate.  The sequence of events leading up to Allen's demise is largely undisputed.  On July 26, 2016, Allen suffered multiple seizures at her home.  She was brought to Lowell General Hospital (the Hospital) in Lowell, Massachusetts, and admitted at 5:00 a.m. There, emergency department staff found that Allen was seven months pregnant and suffering from severe hypertension.[1]  Dr. Fernando

---

[1] According to the undisputed facts, neither Allen nor anyone else had known of her pregnancy until then.

- 4 -

Roca, an obstetrician who was present in the Hospital, was summoned to consult. At 5:22 a.m., Allen was transferred to the labor and delivery unit, where Dr. Roca oversaw her care. While there, Allen suffered another seizure. At 6:54 a.m., Dr. Roca decided that it was necessary to perform a cesarean section, and a baby girl was delivered approximately ten minutes later.

Following the birth of her baby, Allen was moved to the intensive care unit. By that time, she was unresponsive, her pupils were unequal and non-reactive, and she had no reflexes. A brain scan revealed "devastating neurological injury." Allen was then flown by helicopter to a tertiary care hospital in Boston, where she died eleven days later. The causes of death were listed as "intracranial hemorrhage and eclampsia."

**B**

Inasmuch as this case started with a state-court suit against Dr. Roca, we add some context about his involvement. Even though he provided care to Allen at the Hospital, Dr. Roca worked for Lowell Community Health Center (the Health Center), an entity that receives federal grant funds under 42 U.S.C. § 254b.

As of a date no later than January 1, 2015, the Health Center was deemed to be a Public Health Service (PHS) "employee" for purposes of 42 U.S.C. § 233. Its "deemed" status was renewed periodically and was in effect at the time of the events giving rise to the plaintiff's complaint.

As a Health Center employee, Dr. Roca was purportedly "permitted," at least "[i]n case[s] of emergency, . . . to do everything possible to save the patient's life or to save the patient from serious harm." Separately, Dr. Roca's employment contract with the Health Center required him to "maintain [clinical] privileges at a hospital within a reasonable vicinity of [the Health Center]" — a radius that included the Hospital. Moreover, the contract required that he comply with "all rules, regulations and by-laws promulgated by [the Health Center] and such other hospitals at which [he] ha[d] clinical privileges."

In an apparent effort to satisfy the first requirement, Dr. Roca applied for — and received — clinical privileges at the Hospital. To satisfy the second requirement, Dr. Roca needed to comply with "all rules, regulations and by-laws" of both the Health Center and the Hospital. The record does not contain any compendia of these rules, regulations, and by-laws — but it does contain evidence that the Health Center required Dr. Roca to participate in the Health Center's "departmental call schedule," which included responsibility for "addressing all [Health Center] patient care responsibilities when such patients . . . present[ed] at [the Hospital]." In addition, there is evidence that the Health Center allowed Dr. Roca to set aside "[o]ne day of the week or a portion thereof" to perform "operative procedures" at the Hospital.

The record is silent as to the capacity in which Dr. Roca came to attend to Allen's care in the Hospital. We do know, however, that Allen was not a Health Center patient.

**C**

This brings us to the travel of the case. On June 20, 2019, the plaintiff — on behalf of Allen's estate — brought suit in a Massachusetts state court. He alleged, among other things, that the Hospital and Dr. Roca negligently caused Allen's death.

In due course, the Department of Health and Human Services (HHS) notified the Attorney General's representative, the United States Attorney for the District of Massachusetts, that a claim had been brought "against [Dr. Roca], a former employee of [the Health Center]." The government subsequently appeared in the state court "for the limited purpose of notifying the court regarding whether or not the Secretary of HHS has concluded that [Dr. Roca] was 'deemed' to be an 'employee of the Public Health Service' with respect to the actions or omissions that are the subject of this civil action." See 42 U.S.C. § 233(l)(1). The government represented that "HHS ha[d] not yet provided its full report as to whether [Dr. Roca] has deemed status under 42 U.S.C. §§ 233(g) and (h) [and] whether that extends to the acts or omissions that are the subject of this civil action." See id. Nor had the Attorney General yet "been provided with sufficient information" to determine "whether the acts alleged fall within

- 7 -

the scope of 42 U.S.C. § 233(a), the applicable provisions of the [Federally Supported Health Centers Assistance Act], and/or were otherwise within the scope of the entity or individual's 'deemed' employment." The government assured the court that the Attorney General would make such a determination "[o]nce HHS has completed its review and provided its report." The record does not contain anything indicating whether the HHS review was ever completed or whether such a report was ever compiled.

On March 23, 2021, the plaintiff filed an amended complaint, adding claims and defendants. As relevant here, the amended complaint alleged eight counts against Dr. Roca for, among other things, wrongful death. All eight counts implicated Dr. Roca's allegedly negligent treatment of Allen at the Hospital and sought damages for that alleged malpractice.

Three weeks after the amended complaint was filed, the government removed the case to the federal district court pursuant to 42 U.S.C. § 233(c). In its notice of removal, the government represented that Dr. Roca "was at all relevant times employed by" the Health Center and "acting within the scope of such employment." See 42 U.S.C. § 233(c). The plaintiff did not challenge the propriety of the removal through a motion for remand. See id.[2]

---

[2] Given the absence of any such challenge, we take no view as to whether 42 U.S.C. § 233(c) provides an independent basis for removal of a case filed in state court against an entity receiving funds under 42 U.S.C. § 254b or any employee of such an entity.

The government then moved to substitute itself as the named defendant in place of Dr. Roca. The notice of substitution represented that "Dr. Roca was an employee of [the Health Center] during the time alleged in the Amended Complaint" and that "[the Health Center] and its employees were deemed eligible for Federal Tort Claims Act malpractice coverage effective January 1, 2015." Thus, the government concluded:

> Dr. Roca was, at the time of the acts alleged in th[e] Amended Complaint, acting in the course and scope of his employment pursuant to the Federally Supported Health Care Centers Assistance Act of 1995 (Pub. L. 102-501) and 42 U.S.C. § 233(a). As such, any claims for negligence related to alleged acts or omissions of Dr. Roca fall within the [Federal Tort Claims Act], and the exclusive remedy for the plaintiff in this case is against the United States of America.

In further support of substitution, the government filed a certification signed by the Acting United States Attorney for the District of Massachusetts. This certification neither mentioned nor relied upon 42 U.S.C. § 233. Rather — citing the Westfall Act, 28 U.S.C. § 2679 — the Acting United States Attorney certified that:

---

Compare Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 81-82 (2d Cir. 2005) (holding that 42 U.S.C. § 233(c) provides an independent basis for removal under such circumstances), with El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs., 396 F.3d 1265, 1268 (D.C. Cir. 2005) (stating that 42 U.S.C. § 233(l) details the "two circumstances in which [such a] case can be removed" to a federal district court).

On the basis of the information now available with respect to the incidents alleged in the Amended Complaint, defendant [Dr. Roca] was acting at the time of the incidents under circumstances in which Congress has provided by statute that the remedy provided by the Federal Tort Claims Act is made the exclusive remedy.

The district court granted the government's motion for substitution, noting that, pursuant to the Westfall Act, "the Acting United States Attorney has certified that [Dr. Roca] was acting within the scope of his employment for purposes of the Federal Tort Claims Act at the time of the incidents giving rise to" the amended complaint. The government then moved to dismiss the eight counts against it for lack of subject matter jurisdiction and failure to state a claim. See Fed. R. Civ. P. 12(b)(1), (6). The government argued that the court lacked subject matter jurisdiction because the plaintiff had failed to exhaust administrative remedies as required by the Federal Tort Claims Act (FTCA). See 28 U.S.C. § 2675(a). In the alternative, the government sought dismissal on statute-of-limitations grounds. See id. § 2401(b). The plaintiff opposed the motion, arguing in part that the government should not have been substituted for Dr. Roca.

The district court found the plaintiff's opposition unpersuasive and granted the government's motion. See O'Brien v. Lowell Gen. Hosp., No. 21-10621, 2021 WL 5111857, at *5 (D. Mass.

Nov. 3, 2021). The court rejected the plaintiff's contention that the substitution of the United States for Dr. Roca was improper. See id. at *2-3. It ruled that — contrary to the plaintiff's assertion — "Dr. Roca acted within the scope of his federal employment at the time of the events giving rise to" the plaintiff's claims. Id. at *3. The court reasoned, albeit on an incomplete record, that "[a]s a condition of his contract with his employer, [the Health Center], a federally funded facility, Dr. Roca was required to maintain privileges at the Hospital and to provide care in emergency situations, i.e. to provide the care at issue here." Id. In support, the court stated that Dr. Roca's "actions were taken pursuant to his contractual obligations and were meant to serve his employer." Id. The court then held that the substitution of the United States for Dr. Roca was warranted under the Westfall Act and that the plaintiff's claims therefore arose under the FTCA. See id.

The court proceeded to dismiss the eight counts originally brought against Dr. Roca on statute-of-limitations grounds. See id. at *4-5. Because the United States had been substituted for Dr. Roca, the court applied the two-year statute of limitations applicable to claims arising under the FTCA, see id. at *4; see also 28 U.S.C. § 2401(b), rather than the three-year statute of limitations applicable to medical malpractice claims arising under Massachusetts law, see Mass. Gen. Laws ch.

- 11 -

260, § 4.  And having found the plaintiff's claims to be time-barred, the court chose to bypass the government's exhaustion-of-remedies defense.  See O'Brien, 2021 WL 5111857, at *3-5.

The plaintiff filed a notice of appeal, which was premature because the case was still pending against the Hospital and other defendants.  We held the appeal in abeyance while the plaintiff sought and received a partial final judgment.  See Fed. R. Civ. P. 54(b).  Based on the district court's Rule 54(b) certification, see O'Brien v. Lowell Gen. Hosp., 594 F. Supp. 3d 161, 162 (D. Mass. 2022), we allowed the appeal to proceed.

## II

On appeal, this case has taken on new dimensions.  The plaintiff challenges both the order allowing substitution and the order allowing the government's motion to dismiss.  With respect to the first of these challenges, the plaintiff argues that the United States should not have been permitted to substitute itself for Dr. Roca under the Westfall Act because Dr. Roca was "acting outside of the scope of his employment at the time" of the events giving rise to the suit.  Instead of meeting this argument head-on, the government now concedes that the Westfall Act's substitution provisions do not apply in this case.  But although the government confesses error in this regard, it asserts that the error was harmless:  substitution was proper, it suggests, under the PHSA, specifically, 42 U.S.C. § 233.

Even though the government sketched the framework of this argument in its reply memorandum on the motion to dismiss, it neither developed the argument in the district court nor relied upon it at that time. In view of the government's changed position, we directed it to provide additional information regarding whether the requirements of 42 U.S.C. § 233 had been satisfied. The government responded in the affirmative, insisting that the services rendered by Dr. Roca fit within parameters previously determined by the Secretary of HHS (the Secretary) to come within the reach of section 233. Thus — the government submitted — Dr. Roca qualified for substitution and FTCA coverage in this case.

## III

"We review de novo a district court's allowance of a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Rivera v. Kress Stores of P.R., Inc., 30 F.4th 98, 102 (1st Cir. 2022). So, too, we review de novo a district court's grant of a motion to substitute the United States in lieu of a named defendant. See Kearns v. United States, 23 F.4th 807, 811 (8th Cir. 2022); McIntyre v. United States, 545 F.3d 27, 40 (1st Cir. 2008). In conducting this tamisage, we are not wedded to the district court's reasoning but, rather, may resolve the appeal on any basis that is apparent from the record. See Alston v. Spiegel, 988 F.3d 564, 571 (1st Cir. 2021).

- 13 -

## A

Although the government has abandoned its reliance on the Westfall Act, 28 U.S.C. § 2679(d), our analysis necessarily begins with an explanation of the mechanics of that statute's substitution provisions and why those provisions do not apply in this case. The Westfall Act provides, in relevant part, that "[w]hen a federal employee is sued for wrongful or negligent conduct," the Attorney General may "certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" Osborn v. Haley, 549 U.S. 225, 229-30 (2007) (quoting 28 U.S.C. § 2679(d)(1), (2)). When the Attorney General so certifies, "the employee is dismissed from the action, . . . the United States is substituted as defendant in place of the employee," and "[t]he litigation is thereafter governed by the [FTCA]." Id. at 230.

Here, the Attorney General, through the Acting United States Attorney for the District of Massachusetts, certified — pursuant to the Westfall Act — that Dr. Roca was acting within the scope of his employment when he administered care to Allen; and the district court, in reliance upon that Westfall Act certification, allowed the substitution of the United States for Dr. Roca. The district court later stated that substitution was appropriate because "Dr. Roca's treatment of [the] decedent was an

act within the scope of his [federal] employment."[3] O'Brien, 2021 WL 5111857, at *3.

The tectonic plate shifted, though, when the government confessed error in this court. It acknowledged that — notwithstanding its previous filings — the Westfall Act does not apply at all to the issue of substitution in this case because Dr. Roca was not a federal employee. See Thomas v. Phoebe Putney Health Sys., Inc., 972 F.3d 1195, 1203 (11th Cir. 2020) (explaining that reliance on Westfall Act was "mistaken" in case brought against employees of federally funded health center "because § 2679(d) applies only to 'employees of the government'" (alteration omitted)); see also Vélez-Díaz v. Vega-Irizarry, 421 F.3d 71, 75 (1st Cir. 2005) (explaining that Westfall Act allows for substitution of United States when "a federal employee [is] named as a defendant" (quoting Lyons v. Brown, 158 F.3d 605, 606 (1st Cir. 1998))).[4] But in an effort to snatch victory from the

---

[3] The district court hinged its analysis of the substitution question on 28 U.S.C. § 2679(d)(1), which applies to cases originally brought in a federal court. See O'Brien, 2021 WL 5111857, at *2-3. The court's analysis should have proceeded under 28 U.S.C. § 2679(d)(2), which applies to cases commenced in a state court. Here, however, that bevue is beside the point.

[4] Our decision in Gonzalez v. United States, 284 F.3d 281 (1st Cir. 2002), as corrected (May 8, 2002), does not throw shade on this confession of error. Although Gonzalez may be read to suggest that the Westfall Act allows the government to substitute itself for a named defendant when a case is brought against a PHS employee, see id. at 286, the substitution decision there was not challenged on appeal, and we had no reason to address whether 28

- 15 -

jaws of defeat, the government offered a new rationale for substitution: it said that a different statute, the PHSA, 42 U.S.C. § 233, authorizes substitution where, as here, a suit is brought against a "deemed" employee of the PHS. See Thomas, 972 F.3d at 1198 (explaining that the Westfall Act and 42 U.S.C. § 233 establish two "separate statutory scheme[s]" for substitution).

The differences between the Westfall Act and the relevant portions of the PHSA are real, not simply technical. The Westfall Act applies generally to federal employees acting within the scope of their employment. See Vélez-Díaz, 421 F.3d at 75. The PHSA, however, applies to private employees, not government actors; and to obtain its protection with respect to tort claims, an individual must not only be acting within the scope of his employment but also must check a series of other boxes. The government now contends that its substitution for Dr. Roca was

U.S.C. § 2679(d)(2) provided a proper basis for substitution. Thus, the question remains open. See United States v. DiPina, 178 F.3d 68, 73 (1st Cir. 1999) (explaining that if, "in a prior decision, we have not considered an issue directly and assessed the arguments of parties with an interest in its resolution, that [prior] decision does not bind us in a subsequent case where the issue is adequately presented and squarely before us"); E.E.O.C. v. Trabucco, 791 F.2d 1, 4 (1st Cir. 1986) (noting that "an issue of law must have been heard and decided" to constitute binding precedent).

- 16 -

appropriate under the PHSA and urges us to affirm the substitution on that alternate ground.[5]

**B**

We pause to put the government's new contention into context. The PHSA protects officers and employees of the PHS from personal liability "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions" while acting within the scope of their employment. 42 U.S.C. § 233(a); see Hui v. Castaneda, 559 U.S. 799, 806 (2010) (holding that PHS officers and employees are "absolute[ly] immun[e] . . . for actions arising out of the performance of medical or related functions within the scope of their employment"). In lieu of personal liability, the statute makes available a tort action against the United States under the FTCA as the "exclusive" remedy for certain "act[s] or omission[s]" on the part of PHS employees resulting in personal injury or death. 42 U.S.C. § 233(a).

---

[5] In his response to the government's supplemental filing, the plaintiff asserts that the government has waived this argument. We reject this assertion. Waiver doctrine is less readily applied to bar new arguments offered on behalf of an appellee. Cf. Alston, 988 F.3d at 571 (noting that court of appeals "may affirm an order of dismissal on any ground made manifest by the record"). And in any event, we have discretion to overlook waiver in the interests of justice. See United States v. Tkhilaishvili, 926 F.3d 1, 19 (1st Cir. 2019); Correa v. Hosp. S.F., 69 F.3d 1184, 1196 (1st Cir. 1995). We think that the interests of justice counsel in favor of overlooking any waiver here.

When an action is commenced against a PHS employee for personal injury or death resulting from the performance of medical functions rendered in the course of his employment, Congress has tasked the Attorney General with defending the action. See id. § 233(a)-(b), (d). And when such an action is commenced against a PHS employee in a state court, the PHSA mandates removal to the federal district court "[u]pon a certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose." Id. § 233(c). The United States is then substituted as the defendant, and the case proceeds against the United States under the FTCA. See id. § 233(a), (c). If, however, the "district court determine[s] on a hearing on a motion to remand" that a remedy against the United States under section 233(a) is inappropriate, "the case shall be remanded to the State Court." Id. § 233(c).[6]

---

[6] In this respect, the PHSA's removal and substitution provisions differ from those of the Westfall Act. Under the Westfall Act, "the Attorney General's [scope of employment] certification 'is conclusive for purposes of removal.'" Alexander v. Mount Sinai Hosp. Med. Ctr., 484 F.3d 889, 896 (7th Cir. 2007) (quoting 28 U.S.C. § 2679(d)(2)). Even if the Attorney General's certification is erroneous, "district courts [have] no authority to return cases to state courts." Osborn, 549 U.S. at 241. The upshot is that "[f]or purposes of establishing a forum to adjudicate the case . . . § 2679(d)(2) renders the Attorney General's certification dispositive." Id. at 242. The same is not true under the PHSA: 42 U.S.C. § 233(c) "expressly contemplates" the possibility of remand and requires federal district courts to send cases back to state court if they determine

- 18 -

The situation is substantially similar but subtly different for certain federally funded health centers and their employees. Under the Federally Supported Health Centers Assistance Act of 1995 (FSHCAA), public or non-profit private health centers receiving federal funds under 42 U.S.C. § 254b — as well as officers, board members, employees, and certain contractors of such entities — are eligible for the same PHSA and FTCA protections as are enjoyed by PHS employees.[7] See id. § 233(g)(1)(A). To gain this prophylaxis, a federally funded health center or any particular individual associated with it must be "deemed to be an employee" of the PHS. Id. Health centers and affiliated individuals (such as employees) that are so "deemed" are — subject to certain conditions — eligible for FTCA protection "to the same extent" as PHS employees. Id. § 233(g)(1)(A)-(B).

This means, among other things, that if an action is brought in state court against a "deemed" PHS employee, the FSHCAA provides mechanisms both for removing the case to the federal district court and for substituting the United States as the named defendant in the "deemed" employee's stead. One such mechanism

that a "remedy by suit against the United States is not available." Thomas, 972 F.3d at 1203.

[7] Federally funded health centers are health centers that receive grants under 42 U.S.C. § 254b. Such health centers are located in medically underserved areas and/or serve medically underserved populations. See Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. González-Feliciano, 695 F.3d 83, 86 n.1 (1st Cir. 2012).

directs that, within fifteen days of being notified of such a case, the Attorney General may appear in state court and "advise such court as to whether the Secretary has determined" that the defendant "is deemed to be an employee of the [PHS] . . . with respect to the actions or omissions that are the subject of [the] civil action or proceeding." Id. § 233(l)(1). If the Attorney General advises the court that the defendant has been "deemed" a PHS employee "with respect to the actions or omissions" giving rise to the plaintiff's claims, removal is in order. Id.; see id. § 233(c). And once a case has been removed to the federal court, the United States may move for substitution so that the case will proceed under the FTCA. See id. § 233(a), (c); see also Thomas, 972 F.3d at 1198.

The authority to deem an entity or affiliated individual an employee of the PHS — both generally and for purposes of a specific lawsuit — rests with the Secretary. See 42 U.S.C. § 233(g)(1). To obtain deemed status, a health center must submit an application to the Secretary attesting that it and/or particular officers, board members, employees, or contractors satisfy certain statutory criteria. See id. § 233(g)(1)(D); see also id. §§ 233(g)(1)(B)-(C), (h). The Secretary must make a "deeming" determination within thirty days of receipt of the application. See id. § 233(g)(1)(E). Once the Secretary has determined that an entity or individual is deemed to be an employee of the PHS, that

- 20 -

determination goes into effect for "a calendar year that begins during a fiscal year." Id. § 233(g)(1)(A); § 233(k). The Secretary's "deeming" determination is then renewable on an annual basis, provided that the entity submits yearly applications verifying that it and/or its officers, board members, employees, or contractors continue to meet the requisite statutory criteria. See id. § 233(g)(1)(D); see also Agyin v. Razmzan, 986 F.3d 168, 172 (2d Cir. 2021); Thomas, 972 F.3d at 1197 n.1.

We hasten to add that the Secretary's annual "deeming" determination does not conclusively establish PHSA and FTCA coverage with respect to a particular lawsuit when — as in this case — an action is brought against a physician affiliated with a federally funded health center. Rather, coverage hinges on the circumstances in which care has been provided. See 42 U.S.C. § 233(g)(1)(B)-(C). With respect to patients of the health center, coverage is straightforward: the Secretary's "deeming" determination "appl[ies] with respect to services provided" to "all patients of the entity." Id. § 233(g)(1)(B)(i).

The question of coverage is more nuanced where, as here, care is provided to an individual who is not a health center patient. In that circumstance, the "deeming of" an entity or individual as an employee of the PHS only applies "if the Secretary determines, after reviewing an application submitted under subparagraph (D), that the provision of the services to such

- 21 -

individual[]" meets at least one of three conditions.  Id.
§ 233(g)(1)(B)-(C).  Specifically, the provision of such services
must either:

> (i) benefit[] patients of the entity and
> general populations that could be served by
> the entity through community-wide
> intervention efforts within the communities
> served by such entity;

> (ii) facilitate[] the provision of services to
> patients of the entity; or

> (iii) [be] otherwise required under an
> employment contract (or similar arrangement)
> between the entity and [the particular]
> officer, governing board member, employee, or
> contractor of the entity.

Id. § 233(g)(1)(C); see 42 C.F.R. § 6.6(d).  Under subparagraph
(D), "[t]he Secretary may not . . . deem an entity or an officer,
governing board member, employee, or contractor of the entity to
be an employee of the [PHS] . . . , and may not apply such deeming
to services" provided to persons who are not patients of the
entity, "unless the entity has submitted an application for such
deeming to the Secretary."  42 U.S.C. § 233(g)(1)(D).  Congress
has afforded the Secretary the power to prescribe the "form" and
"manner" of such applications.  Id.

HHS regulations reaffirm that FTCA coverage extends to
"services provided to individuals who are not patients of a covered
entity . . . only if the Secretary determines that" at least one
of the three conditions listed at 42 U.S.C. § 233(g)(1)(C) has

- 22 -

been satisfied. 42 C.F.R. § 6.6(d). The Secretary has crafted two methods for making that determination. See id. § 6.6(e)(4). The first method allows a health center or affiliated individual to submit an "application . . . seek[ing] a particularized determination" that coverage extends to the care at issue. Id. The second method involves a predetermination by the Secretary that FTCA coverage extends in certain circumstances without any need for a "specific application" on the part of the entity or affiliated individual. Id. To qualify for this predetermined coverage, the care rendered or the "activity or arrangement in question" must "fit[] squarely" into one of a number of scenarios described in the regulation. Id.; see id. § 6.6(e)(4)(i)-(iv) (describing scenarios). If there is no square fit, the party seeking coverage must attempt to obtain "a particularized determination" through the first method. Id. § 6.6(e)(4).

## C

With this backdrop in place, we return to the case at hand. As we have said, the government has reinvented its theory of substitution: it has forgone its earlier reliance on the Westfall Act and now relies instead on the PHSA. Although the government concedes that neither the Health Center nor Dr. Roca sought a particularized determination that the care he provided to Allen triggered FTCA coverage, it nonetheless claims that substitution is appropriate under the PHSA because the care

- 23 -

rendered by Dr. Roca to Allen fits squarely within one or more of the scenarios described in 42 C.F.R. § 6.6(e)(4)(i)-(iv). In particular, the government urges us to find that the care provided by Dr. Roca fits squarely within the scenarios described in subsections (ii) and (iv).

The plaintiff sees things differently. He notes that the Secretary has never made a particularized "deeming" determination regarding Dr. Roca; that the existing record does not support the government's claim that the regulation applies; and that, in all events, Dr. Roca should not be regarded as acting within the scope of federal employment. He also questions whether the Secretary has the authority to predetermine that the scenarios listed in 42 C.F.R. § 6.6(e) automatically qualify a "deemed" PHS employee for coverage under the FTCA. In the plaintiff's words, that type of "blanket deem[ing]" contravenes the text of 42 U.S.C. § 233(g)(1)(D), which prohibits the Secretary from "apply[ing]" a deeming decision to cover services provided to non-patients of a health center "unless the [health center] has submitted an application for such deeming to the Secretary." 42 U.S.C. § 233(g)(1)(D). The statute, on the plaintiff's reading, does not give the Secretary the authority to "waive" the requirement that applications be submitted and considered on a "case-by-case" basis. For all of these reasons, he claims that the substitution of the United States for Dr. Roca was improvident.

- 24 -

The answer to the question of whether Dr. Roca's care fits squarely within one or more of the described scenarios is inscrutable on the existing record.[8] The government principally relies on the scenario found at 42 C.F.R. § 6.6(e)(4)(ii). Under this scenario, a "deemed" PHS employee qualifies for FTCA coverage when providing periodic on-call or emergency room coverage at a hospital to non-health center patients if that "[p]eriodic hospital call or hospital emergency room coverage is required by the hospital as a condition for obtaining hospital admitting privileges." 42 C.F.R. § 6.6(e)(4)(ii). To fit within this scenario, "[t]here must also be documentation for the particular health care provider [showing] that th[e] coverage is a condition of employment at the health center." Id.

As a fallback, the government cites to the scenario limned in 42 C.F.R. § 6.6(e)(4)(iv). This scenario applies to "[c]overage [provided] in [c]ertain [i]ndividual [e]mergenc[y]" situations. To fit within this scenario, a number of criteria must be satisfied. First, a "health center provider" must be "providing or undertaking to provide covered services to [either] a health center patient within the approved scope of project of

---

[8] For purposes of this discussion, we do not address the plaintiff's overarching challenge to the legality of certain of the Secretary's regulations.

the [health] center, or to an individual who is not a patient of the health center under the conditions set forth in [42 C.F.R. § 6.6]." Id. § 6.6(e)(4)(iv). Second, while providing or undertaking to provide such services, "the provider [must be] asked, called upon, or undertake[] . . . to temporarily treat or assist in treating [a] non-health center patient" experiencing an emergency. Id. Third, the provision of care must be "at or near th[e] location" where the provider was originally providing care. Id. And, finally, "the health center must have documentation (such as employee manual provisions, health center bylaws, or an employee contract) [showing] that the provision of individual emergency treatment, when the practitioner is already providing or undertaking to provide covered services, is a condition of employment at the health center." Id.

On the government's new theory of the case, its right to substitution depends on whether the care administered by Dr. Roca to Allen fits squarely within one or both of these scenarios. The rub, however, is that neither of these scenarios was before the district court. Indeed, the regulation that creates the scenarios was never mentioned in that court. It is not surprising, then, that the record is bereft of much of the documentation needed to assess the applicability vel non of these scenarios. In short, the record — as presently constituted — simply does not allow us to make a reasoned determination as to whether the care

administered to Allen by Dr. Roca fits squarely within either of the scenarios that the government labors to invoke.

The government admits as much but tells us that we may fill the gaps by resorting to imagined knowledge of "standard practices" and by accepting new evidentiary proffers. On this gap-filled record, though, we lack a sufficient basis for determining what practices are "standard" in the community hospital setting. In addition, we repeatedly have cautioned that appeals cannot be decided on the basis of evidentiary materials — other than those that are susceptible to judicial notice — not incorporated in the district court record. See, e.g., United States v. Kobrosky, 711 F.2d 449, 457 (1st Cir. 1983) ("We are an appellate tribunal, not a nisi prius court; evidentiary matters not first presented to the district court are, as the greenest of counsel should know, not properly before us." (emphasis in original)).

To say more would be to paint the lily. The government has confessed error, acknowledging that the district court's favorable decision on a critical issue — whether the United States should be substituted for Dr. Roca — rests on a porous foundation. To shore up that porous foundation, the government asks us to put our stamp of approval on an alternative theory for substitution. But the government has not pointed to evidence in the record sufficient to support its new theory and — equally as important —

the plaintiff has had no opportunity to offer evidence relating to that theory, to challenge the government's suggested evidence, or to present his legal arguments.  To cinch the matter, the district court has had no opportunity to consider the government's revamped position and to give us the benefit of its thinking.  See CSX Transp., Inc. v. Healey, 861 F.3d 276, 287 (1st Cir. 2017) (explaining that "[w]e often hesitate to address in the first instance issues on which we lack the benefit of a district court's consideration"); see also Rivera-Corraliza v. Morales, 794 F.3d 208, 217 (1st Cir. 2015) (remanding when court of appeals did not have benefit of district court's evaluation of arguments).

This is a court of appeals, and that nomenclature aptly describes our core function.  Appellate courts are, by definition, courts of review.  They are not courts of first instance.  In the awkward posture in which this case now stands, we think it both fair and prudent to vacate the substitution order, vacate the partial final judgment entered below, and remand for further proceedings consistent with this opinion.  On remand, the district court should allow such limited discovery as may be necessary for the resolution of the substitution issue.  See N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 18 (1st Cir. 2009).

**V**

We need go no further. The question of whether the United States should be substituted for Dr. Roca is a threshold question. Until that question is resolved, there is no way to know whether the FTCA applies to this suit. Consequently, there would be no point in addressing either the issue of whether the FTCA's exhaustion-of-remedies requirement, 28 U.S.C. § 2675(a), forecloses the exercise of subject matter jurisdiction or the issue of whether the plaintiff's action is time-barred. For the reasons elucidated above, both the substitution order and the partial final judgment are <u>vacated</u> and the case is <u>remanded</u> for further proceedings consistent with this opinion. The parties shall bear their own costs.

**<u>Vacated and remanded</u>**.