# United States Court of Appeals
## For the First Circuit

No. 24-1844

BRAD O'BRIEN, Personal Representative of the Estate of Melissa

Allen,

Plaintiff, Appellant,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Gelpí, Kayatta, Circuit Judges,
and Smith,* District Judge.

Adam R. Satin, with whom Andrew C. Meyer, Jr. and Lubin & Meyer, P.C. were on brief, for appellant.

Kevin Benjamin Soter, with whom Brett A. Shumate, Acting Assistant Attorney General, Leah B. Foley, United States Attorney, and Dana Kaersvang, Attorney, Appellate Staff, Civil Division, were on brief, for appellees.

---

* Of the District of Rhode Island, sitting by designation.

September 11, 2025

**GELPÍ, Circuit Judge.** Plaintiff-Appellant Brad O'Brien ("O'Brien") filed a wrongful death medical malpractice suit as the personal representative of the estate of Melissa Allen ("Allen"), who died eleven days after receiving medical care at Lowell General Hospital ("LGH" or "the Hospital"). The suit alleged that LGH and its providers -- including Dr. Fernando Roca ("Dr. Roca") -- were negligent in the care of Allen, acts which O'Brien contends resulted in Allen's death. The district court dismissed the suit for failure to make timely presentment under the Federal Tort Claims Act ("FTCA"). We affirm.

## I. BACKGROUND

O'Brien is the surviving partner of Allen and the personal representative of her estate. The tragic events leading up to Allen's death are largely undisputed. On July 26, 2016, Allen suffered multiple seizures at her home. She was brought to LGH's emergency room and later admitted to the Hospital. Hospital staff determined that Allen was seven months pregnant and suffering from severe hypertension. Dr. Roca, an obstetrician, was on call at LGH and attended to Allen. Dr. Roca determined it was necessary to perform an emergency caesarian section and, subsequently, delivered Allen's baby girl. Following the birth, an unresponsive Allen was transferred to the intensive care unit where a brain scan revealed "devastating neurological injury." Allen was then flown by helicopter to a tertiary care hospital in Boston, where

- 3 -

she died eleven days later. The cause of death was listed as "intracranial hemorrhage and eclampsia."

In March 2021, O'Brien sued Dr. Roca and LGH in state court. At the time Dr. Roca rendered care, he worked for Lowell Community Health Center ("LCHC"), a center receiving federal grants under 42 U.S.C. § 245b. Also at the time of the relevant events, LCHC was a "deemed" Public Health Service ("PHS") program for purposes of 42 U.S.C. § 233.[1] Dr. Roca needed clinical privileges at a nearby hospital as a condition of his employment; he obtained those privileges at LGH. To maintain privileges, Dr. Roca was required to participate in the Hospital's on-call rotation system and treat incoming patients under the same.

Under the Federal Employees Liability Reform and Tort Compensation Act ("the Westfall Act"), the government substituted itself for Dr. Roca and removed the case to federal court. The Westfall Act provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his . . . employment at the time of the incident out of which the claim arose, any civil action . . . commenced upon such claim in a State court shall be removed . . . to the district court of the United States . . . and the United States shall be substituted as the party defendant.

---

[1] "Deeming" under the Public Health Service Act ("PHSA") refers to the process of granting federally funded health centers and their employees the same legal protections as employees of the PHS. See O'Brien v. United States, 56 F.4th 139, 148-49 (1st Cir. 2022).

- 4 -

28 U.S.C. § 2679(d)(2).  The district court upheld substitution and dismissed the case, holding that O'Brien's claims were time-barred by the two-year limitations period under the FTCA.  O'Brien appealed.

On appeal, the government acknowledged its argument incorrectly relied on the Westfall Act, which applies to government employees, instead of the PHSA, which applies to health centers.[2]  The government argued that substitution was still proper, although for different reasons than would have applied under the Westfall Act.  We vacated the substitution order and remanded given the error "brought new issues into play and left gaps in the evidentiary record."  O'Brien, 56 F.4th at 141.  On remand, the government again moved for substitution, this time based on the PHSA.  On September 6, 2024, the district court granted the government's motion and dismissed O'Brien's complaint.  O'Brien again appeals.

## A. STANDARD OF REVIEW

We "review the grant of a motion to dismiss de novo, accepting well-pled facts as true and drawing all inferences in favor of the non-moving party."  3137, LLC v. Town of Harwich, 126

_____

[2] "The Westfall Act amended the FTCA to make its remedy against the United States the exclusive remedy for most claims against Government employees arising out of their official conduct."  Hui v. Castaneda, 559 U.S. 799, 806 (2010).

- 5 -

F.4th 1, 8 (1st Cir. 2025) (quoting Rivera-Rosario v. LSREF2 Island Holdings, Ltd., 79 F.4th 1, 4 (1st Cir. 2023)). "So, too, we review de novo a district court's grant of a motion to substitute the United States in lieu of a named defendant." O'Brien, 56 F.4th at 145.

We also review scope of employment determinations under the same de novo standard. McIntyre ex rel. Estate of McIntyre v. United States, 545 F.3d 27, 40 (1st Cir. 2008) (citing Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996)).[3]

## B. STATUTORY BACKGROUND

The PHSA, 42 U.S.C. § 233, "protects PHS employees from personal liability for injuries resulting from the performance of medical services rendered within the scope of their employment." O'Brien v. Roca, 719 F. Supp. 3d 158, 161 (D. Mass.), reconsideration denied sub nom., O'Brien v. Lowell Gen. Hosp., 749 F. Supp. 3d 209 (D. Mass. 2024) (citing 42 U.S.C. § 233(a)). Pursuant to the PHSA, suits brought against employees of public health centers receiving federal funds are governed under the FTCA, 28 U.S.C. § 1346. Thus, when an action is filed against a PHS employee in state court, the PHSA requires the government to be

---

[3] We have held that "motions to dismiss based on the FTCA's statute of limitations should now be brought under Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim upon which relief can be granted), or considered pursuant to Rule 56 (summary judgment)." Morales-Melecio v. United States (Dep't of Health & Hum. Servs.), 890 F.3d 361, 367 (1st Cir. 2018).

substituted as the defendant and the case to be removed to federal court upon the Attorney General's certification that the PHS employee acted within the scope of his or her employment. See 42 U.S.C. § 233(c). In other words, "[w]hen federal employees are sued for damages for harms caused in the course of their employment, the [FTCA] generally authorizes substitution of the United States as the defendant." Hui, 559 U.S. at 801. As we explained in Morales-Melecio v. United States (Dep't of Health & Hum. Servs.):

> The FTCA constitutes a limited waiver of [the United States'] sovereign immunity, allowing, in relevant part, for damages claims to be brought against the United States for any "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."

890 F.3d 361, 366 (1st Cir. 2018) (quoting 28 U.S.C.§ 1346(b)(1)).[4]

The Federally Supported Health Centers Assistance Act of 1995 ("FSHCAA") amended the PHSA to allow for certain health care entities to apply for federal funds and to extend, to health centers, the "same PHSA and FTCA protections as are enjoyed by PHS

---

[4] "In lieu of personal liability, the statute makes available a tort action against the United States under the FTCA as the 'exclusive' remedy for certain 'act[s] or omission[s]' on the part of PHS employees resulting in personal injury or death." O'Brien, 56 F.4th at 147 (alterations in original) (quoting 42 U.S.C. § 233(a)).

employees." See O'Brien, 56 F.4th at 148 (citing 42 U.S.C. § 233(g)(1)(A)). "[A] federally funded health center or any particular individual associated with it must be 'deemed to be an employee' of the PHS" in order for the protections to apply. Id. These deeming determinations are made by the Secretary of the Department of Health and Human Services ("Secretary"). If deemed, a health center is generally covered under the FTCA when treating its own patients; however, deeming does not conclusively establish liability protection for services rendered to someone who was not a patient of the health center.[5] Id. at 149. Covered entities have to "comport with specific requirements laid out in 233(g) and accompanying [HHS] regulations." Bray v. Bon Secours Mercy Health, Inc., 97 F.4th 403, 407 (6th Cir. 2024)(citing 42 C.F.R. § 6.6).[6]

Further, an "act or omission [giving] rise to the claim" must also have occurred while the defendant was "acting within the scope of his office or employment." 42 U.S.C. § 233(a). The

---

[5] "[T]he Secretary's annual 'deeming' determination does not conclusively establish PHSA and FTCA coverage with respect to a particular lawsuit when -- as in this case -- an action is brought against a physician affiliated with a federally funded health center." In such a case, "coverage hinges on the circumstances in which care has been provided." O'Brien, 56 F.4th at 149.

[6] "These requirements include that the entity be a covered entity; that the individual be a covered employee, contractor, or officer of that entity; and that the individual act within the scope of his or her employment. Additionally, coverage applies only to services related to grant-supported activities." Bray, 97 F.4th at 407 (citing 42 C.F.R. § 6.6).

Attorney General determines whether to certify "that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose." Id. § 233(c). "If the Attorney General advises [a] court that the defendant has been 'deemed' a PHS employee 'with respect to the actions or omissions' giving rise to the plaintiff's claims, removal is in order." O'Brien, 56 F.4th at 148 (citing § 233(l)(1)).

If the covered individual provided services to a non-patient of the covered entity, however, malpractice liability protection requires either: (1) a specific determination by the Secretary as to the specific arrangement at issue pursuant to 42 C.F.R. § 6.6(d)[7] or (2) that the services provided "fall squarely

---

[7] The regulation provides:

> Acts and omissions related to services provided to individuals who are not patients of a covered entity will be covered only if the Secretary determines that:
>
> (1) The provision of the services to such individuals benefits patients of the entity and general populations that could be served by the entity through community-wide intervention efforts within the communities served by such entity;
>
> (2) The provision of the services to such individuals facilitates the provision of services to patients of the entity; or
>
> (3) Such services are otherwise required to be provided to such individuals under an employment contract or similar arrangement between the entity and the covered individual.

42 C.F.R. § 6.6(d).

- 9 -

within" one of the listed scenarios the Secretary has already categorically deemed covered under 42 C.F.R. § 6.6(e)(4). Bray, 97 F.4th at 407.

## II. DISCUSSION

O'Brien makes four principal arguments on appeal. First, he contends that the district court erred in holding that the regulation promulgated by the Secretary did not violate the PHSA's statutory scheme. Second, O'Brien argues that the district court erred in finding that deeming extended to Dr. Roca's treatment of Allen. Third, O'Brien believes his time to file a claim did not begin accruing until he first spoke to his lawyer in September 2017. Lastly, O'Brien contends that, even if his claim accrued before he spoke with his lawyer, the FTCA's Savings Clause saves his claim. We analyze each argument seriatim, concluding that the district court correctly allowed the substitution of the United States as the defendant and properly dismissed the case. We, thus, affirm.

### A. The Regulation's Validity

As noted, by statute, health centers and their employees are generally deemed federal employees only when providing services to individuals who are health center patients.[8] The

---

[8] The statute provides: "The deeming of any entity or officer . . . of the entity to be an employee of the [PHS] . . . shall apply with respect to services

- 10 -

Secretary's regulation includes two methods for determining whether FTCA coverage extends to non-patient services:

> The first method allows a health center or affiliated individual to submit an "application . . . seek[ing] a particularized determination" that coverage extends to the care at issue. The second method involves a predetermination by the Secretary that FTCA coverage extends in certain circumstances without any need for a "specific application" on the part of the entity or affiliated individual. To qualify for this predetermined coverage, the care rendered or the "activity or arrangement in question" must "fit[ ] squarely" into one of a number of scenarios described in the regulation.

O'Brien, 56 F.4th at 149 (alterations in original) (citations omitted) (citing 42 C.F.R. § 6.6(e)(4)). Where the activity or arrangement does not fit squarely into one of the scenarios, an additional "particularized determination of coverage" application is required. 42 C.F.R. § 6.6(e)(4).

When reviewing an application, the Secretary determines whether provision of services to the relevant non-patient meets at least one of the three statutory criteria under 42 C.F.R. § 6.6(d).[9] Those criteria are that the treatment must, in the view of the Secretary, "benefit[] patients of the entity and general

---

provided . . . (i) to all patients of the entity, and (ii) subject to subparagraph (C), to individuals who are not patients of the entity." 42 U.S.C. § 233(g)(1)(B).

[9] The regulation goes on to list examples of specific scenarios that fall within the scope of paragraph (d). See 42 C.F.R. § 6.6(e)(4)(i)-(iv).

populations that could be served by the entity," "facilitate[] the provision of services to patients of the entity," or be "otherwise required under an employment contract (or similar arrangement)." 42 U.S.C. § 233(g)(1)(C). For coverage of medical services provided to a non-patient, the federally funded health center (generally) must submit an application to HHS. See id. § 233(g)(1)(D).

The government tells us that the care provided in the underlying facts of this case falls under 42 C.F.R. § 6.6(e)(4)(ii), "Hospital-Related Activities." O'Brien challenges the legality of this provision, arguing that the issuing of automatic or "blanket" pre-deeming -- without the required documents supporting individualized extension of coverage or pre-requisite review -- violates the PHSA and is beyond the powers afforded to the Secretary. In making this argument, O'Brien says deeming of non-clinic patients is inappropriate until after the Secretary has reviewed a particularized application for the care in question. Thus, on this reading of the statute, O'Brien insists the district court erred in upholding the regulation as permissible.

By contrast, the government contends that the district court correctly concluded predeterminations are consistent with the PHSA. The government argues the statute does not require health centers to submit "additional, unnecessary applications and

- 12 -

information" for particularized determinations of coverage for treatment of non-patients during certain commonly recurring situations. It counsels that a periodic hospital call required for hospital admitting privileges, like Dr. Roca's treatment of Allen, is covered. Anything more would be too "impractical" and "burdensome" for hospitals and health centers where they would need to try to foresee and capture all possible future incidents. The Secretary is given discretion to determine the form and manner of deeming applications and, the government reasons, the decision to pre-deem certain scenarios involving non-patients falls within that discretion.

We agree with the government that the regulation is consistent with the PHSA. Relevant here is 42 U.S.C. § 233(g)(1)(C)(iii), under which the care by a health center employee (like Dr. Roca) to a non-health center patient (like Allen) meets the deeming criteria since such services "[were] otherwise required under an employment contract (or similar arrangement) between the entity and an . . . employee . . . ." As particularly relevant here, the implementing regulation reads: "Periodic hospital call or hospital emergency room coverage is required by the hospital as a condition for obtaining hospital admitting privileges. There must also be documentation for the particular health care provider that this coverage is a condition of employment at the health center." 42 C.F.R. § 6.6(e)(4)(ii).

- 13 -

The HHS mandates that any services described in subsection (e)(4) are already covered -- or "pre-deemed" -- under 42 C.F.R. § 6.6(d) "without the need for specific application for an additional coverage determination." 42 C.F.R. § 6.6(e)(4). The statute provides that "[t]he Secretary may not" deem an entity or its employee "and may not apply such deeming to services" to non-patients "unless the entity has submitted an application for such deeming to the Secretary in such form and such manner as the Secretary shall prescribe." 42 U.S.C. § 233(g)(1)(D). The district court correctly observed that "[t]he statute refers to the term 'application' in the singular, indicating that at least, but not necessarily more than, one application is required." The statute, as written, does not require or specify the information required for verification of coverage. 42 U.S.C. § 233(g)(1)(D). We, thus, hold that the Secretary acted within his discretion in implementing the regulation at issue.

## B. Dr. Roca's Treatment of Allen

As relevant to O'Brien's next argument, "42 C.F.R. § 6.6(d) provides that '[a]cts and omissions related to services provided to individuals who are not patients of a covered entity will be covered only if the Secretary' makes a particularized determination that the arrangement satisfies certain enumerated objectives of the FSHCAA." Bray, 97 F.4th at 413. "Absent a prior particularized determination as to the coverage of the arrangement

- 14 -

by the Secretary, treatment of non-entity patients falls outside the scope of coverage unless it fits within one of the circumstances enumerated by § 6.6(e)(4)." Id. Section 6.6(e)(4) lists four such circumstances. The relevant circumstance here is described in Section 6.6(e)(4)(ii), which provides that "[t]here must . . . be documentation for the particular health care provider that [the relevant] coverage is a condition of employment at the health center." 42 C.F.R. § 6.6(e)(4)(ii).

The district court found that Dr. Roca's treatment of Allen met those conditions. In so holding, it stated that "Dr. Roca's employment contract with [LCHC] required that he provide on-call coverage at [the Hospital]." It, thus, found that Dr. Roca's treatment of Allen was covered by the regulation because it was (1) periodic and (2) "required by the hospital as a condition for obtaining hospital admitting privileges."

On appeal, O'Brien argues that Dr. Roca's treatment of Allen does not fit within the (e)(4) exception. He tells us that Dr. Roca's employment contract only required that Dr. Roca obtain admitting privileges at a hospital in the vicinity of LCHC and that there is no mention of emergency room coverage. Therefore, the argument goes, Dr. Roca was not contractually obligated to care for non-health center patients under his employment agreement, so his deeming (and its accompanying liability protection) did not extend to his treatment of Allen, a non-health

- 15 -

center patient. Without a contractual obligation to provide the care in question, O'Brien argues that the statute required a particularized deeming application -- in addition to LCHC's initial deeming application -- to extend coverage of services provided by Dr. Roca to a non-patient such as Allen.

Furthermore, O'Brien contends that the regulation "explicitly requires there be documentation that Dr. Roca's treatment of Ms. Allen . . . was a condition of Dr. Roca's employment at the health center."[10] O'Brien contends no such documentation was ever submitted or approved. Given Dr. Roca was not contractually obligated to care for Allen and no particularized deeming application was submitted, O'Brien submits that the district court erred in ruling that the United States was properly substituted as the defendant under the Health Centers Act.

In response, the government argues no further deeming application was needed to cover Dr. Roca's treatment of Allen. The government reasons that Dr. Roca's contract required him to participate in LCHC's "departmental call schedule," which consisted of caring for LCHC patients admitted to one of the approved hospitals within the center's vicinity -- a radius which included LGH. For access to the hospital's facilities and

---

[10] Documentation that hospital emergency room coverage was a condition of Dr. Roca's employment at the health center is a factual pre-requisite for application of the on-call exception. 42 C.F.R. § 6.6(e)(4)(ii).

authorization to admit LCHC patients, Dr. Roca needed to "maintain [clinical] privileges" by "conform[ing] with . . . all rules, regulations and by-laws promulgated by" the hospital.  Indeed, one of the hospital's regulations required that Dr. Roca participate in LGH's hospital call rotation, which included treating non LCHC patients.  Therefore, the government argues, Dr. Roca's employment at LCHC was contingent on his participation in LGH's hospital call rotation, which required him to treat non-health center patients such as Allen.  Accordingly, the government reasons, Dr. Roca's deeming extended to his care of Allen and was covered under 42 U.S.C. § 233(g)(1)(C).

We agree with the government's understanding.  Dr. Roca's employment contract with LCHC required he "participate in the departmental call schedule" and, as such, stated that he "may be asked to be on primary call wherein [he] will be responsible for addressing all [LCHC] patient care responsibilities when such patients seek services either by the telephone or when they present at [LGH]."  It also stated that the "[p]hysician shall maintain privileges at a hospital within a reasonable vicinity of [LCHC] throughout duration of this Agreement, including [LGH]."  Furthermore, Dr. Roca needed to "conform with all . . . regulations and by-laws promulgated by [LCHC] and such other hospitals at which Physician has clinical privileges."

Thus, Dr. Roca was contractually obligated to maintain admitting privileges at LGH, and, to do that, Dr. Roca needed to treat non health center patients, like Allen, during required LGH on-call rotations.

Bray v. Bon Secours Mercy Health, Inc. reached a similar conclusion, with the Sixth Circuit holding that a physician's conduct fell under the regulation where that conduct furthered "grant objectives and the provision of care" to patients. 97 F.4th at 413. That suit also involved a non-patient pregnant woman, treated by a physician who was required by his contract to "obtain and maintain hospital privileges as a part of [his] practice." Id. at 408 (alteration in original). The Bray physician was also required to "provide call coverage overnight and on weekends." Id. Like the Bray record, the record here supports the conclusion that LCHC required Dr. Roca to obtain and maintain admitting privileges for on-call shifts -- like the one in which Dr. Roca encountered Allen. Id. at 414.

The government has provided the necessary documentation to show that LGH conditioned admitting privileges on satisfaction of on-call coverage and that Dr. Roca acted in accordance with that condition when treating Allen. Thus, the necessary requirements under the § 6.6(e)(4)(ii) exception were met.

- 18 -

## C. Timeliness of FTCA Claim

We have held that legal questions regarding the timeliness of an FTCA claim are reviewed de novo. Skwira v. United States, 344 F.3d 64, 72 (1st Cir. 2003). We also review de novo appeals involving "only the objective reasonableness of [a] plaintiff['s] failure to discern at an earlier time both their injury and its likely cause." Donahue v. United States, 634 F.3d 615, 623 (1st Cir. 2011); see Skwira, 344 F.3d at 72.

The FTCA's statute of limitations provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). A tort claim under the FTCA generally accrues at the time of the plaintiff's injury. Donahue, 634 F.3d at 623; see also Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002). However, the Supreme Court has held that a "discovery rule" exception may toll the commencement of accrual in medical malpractice cases. Skwira, 344 F.3d at 73 (citing United States v. Kubrick, 444 U.S. 111, 113 (1979)); see also McIntyre v. United States, 367 F.3d 38, 52 (1st Cir. 2004) (the discovery rule also applies to wrongful death actions). The exception delays the commencement of the clock to when "plaintiff discovers, or in the exercise of due diligence should have discovered, the factual basis for the cause of action." McIntyre, 367 F.3d at 52 (citation omitted); see also Donahue, 634

F.3d at 624 (finding accrual begins once the generally available information or the likely outcome of a reasonably diligent investigation is sufficient for the plaintiff to reasonably know they were injured).

This does not mean a plaintiff must know the "full extent of the injury." Morales-Melecio, 890 F.3d at 369 (citation omitted). In clarifying the knowledge prong of the discovery rule, this court has held that a plaintiff does not need actual or even suspected knowledge that the injury was negligently inflicted, Donahue, 634 F.3d at 623, nor that the acts might constitute medical malpractice, Kubrick, 444 U.S. at 125. Instead, plaintiffs need only be reasonably diligent when, once they know of the injury and its cause, they inquire within the medical and legal communities as to whether the treatment was proper and conformed to the generally applicable standard of care. Gonzalez, 284 F.3d at 289 (citations omitted).[11]

We have held that the FTCA's statute of limitations is triggered by "the discovery of sufficient facts about the injury and its cause to prompt a reasonable person to inquire and seek advice preliminary to deciding if there is a basis for filing an

---

[11] Once a potential claimant is aware of the injury and the identity of the parties who caused it, he is no longer "at the mercy of" the government and can seek counsel from doctors or lawyers regarding the injury and the care received. See Kubrick, 444 U.S. at 122.

administrative claim against the government." Skwira, 344 F.3d at 78.[12] In order for a plaintiff to take advantage of this discovery rule, he or she must demonstrate that the "factual basis for the cause of action [was] inherently unknowable at the time of the injury" for his or her claim to be found timely. Gonzalez, 284 F.3d at 288-89. Anything less countervails the statute of limitations' purpose in "requir[ing] the reasonably diligent presentation of tort claims against the Government." Id. (citing Kubrick, 444 U.S. at 123); see Skwira, 344 F.3d at 81 (finding the factual basis of a claim is "inherently unknowable" when there are no facts discoverable through the exercise of reasonable diligence for a plaintiff to reasonably believe there may be a connection).

O'Brien argues his cause of action did not begin accruing until September 6, 2017, when he first met with his lawyer. Importantly, according to O'Brien, Allen's death certificate listed "eclampsia as a consequence of pregnancy" as the cause of death. O'Brien argues that because these were natural causes, there was no indication that any errors in care caused Allen's death. It was not until O'Brien met with his lawyer, he claims, that he learned Dr. Roca's possible failure to properly treat the

---

[12] In Skwira, where the family was told the victim died of natural causes, the question was when, as a factual matter, was there sufficient information available to the plaintiffs to reveal a causal connection between the injury and the government. Skwira, 344 F.3d at 78.

eclampsia within the required standards of care could have caused the death of Allen. O'Brien contends that the district court erred in holding that "accrual of the plaintiff's claim was not tolled by the federal discovery rule." He also argues that absent specialized medical expertise, it was reasonable to believe Allen inevitably died naturally from the medical emergency that began before being treated by Dr. Roca, not from any negligence in treatment. Therefore, O'Brien reasons, time began to accrue when he first learned, on September 6, 2017, that the doctor's actions could be a probable cause of Allen's death. Since O'Brien had two years to file, he argues his filing in June of 2019 was timely.

The government argues the accrual began at the time of Allen's death on August 6, 2016, and the district court correctly ruled that the discovery rule did not pause accrual of O'Brien's claims until he spoke with an attorney. The government argues that even if O'Brien could not have reasonably known about the negligence, he failed to show reasonable diligence in inquiring about the factual basis for a cause of action. The government argues that O'Brien had two years to investigate the death of Allen and file a claim. However, he waited over a year after Allen's death to first speak with a lawyer. After meeting with his lawyer, O'Brien still had eleven months to timely file his claim and nevertheless failed to do so. Therefore, the government argues,

O'Brien's claims expired in August 2018 and the filing in June 2019 was untimely.

In Sanchez v. United States, we stated: "[t]he death of a generally healthy woman in childbirth is sufficiently rare in this country today so as to make most reasonable people ask why it happened." 740 F.3d 47, 53 (1st Cir. 2014). Furthermore, retaining counsel following such a death "is a telling sign that a reasonable person would have concluded that 'reasonable diligence' was called for in order to determine whether there was negligence." Id. So, too, in Morales-Melecio v. United States. There, we held that appellant's claim was time-barred and rejected the argument that the cause of death for the decedent -- a thirty-six-year old man weighing over 370 pounds with a history of hypertension -- was unclear because he was not "generally healthy." 890 F.3d at 370. Moreover, we also held appellants had sufficient facts about decedent's condition and care before their receipt of the death certificate to alarm a reasonable person the probable cause of death was connected to the defendant's treatment, or lack thereof. Id.; cf. Cascone v. United States, 370 F.3d 95, 97 (1st Cir. 2004) (finding there "was nothing inherently suspicious in [decedent's] reported death of an apparent heart attack," where the death certificate listed the cause of death as "chronic atrial fibrillation" (emphasis omitted)); K.B. v. United States, No. 23-CV-12030-ADB, 2024 WL 2701969, *4 (D. Mass. May 24,

2024) (the transfer of a patient to Tufts Children's Hospital, a tertiary hospital, created a reasonable basis to know an injury related to the care had occurred, even without access to the full medical records).[13]

O'Brien argues this reasoning does not apply as Allen was not "generally healthy" because the medical emergency began before she was admitted and treated by Dr. Roca. This argument misses the mark. One medical emergency does not conclusively mean Allen was not "generally healthy." There is no indication in the record Allen previously suffered a difficult or high-risk pregnancy, nor that she had a history of illness. O'Brien provides no other basis for his argument and, so, is not entitled to tolling of the statute of limitations.

### D. Savings Clause

"The Savings Provision of the FTCA cannot resurrect the plaintiff's claim[ but may] excuse[] a plaintiff's failure to exhaust administrative remedies where" two circumstances are met. Gonzalez, 284 F.3d at 291 n.11. Those two circumstances are that "(1) the tort claim accrued within two years of the filing of the

---

[13] In Cascone, the fact that the decedent was admitted for treatment of a different illness, rather than a cardiac condition, did not undermine the inference that he died of natural causes. The court held, "[i]t was perfectly reasonable for [the family of the decedent] to believe . . . that the [new illness] exacerbated his preexisting heart conditions or that his heart problems simply happened to flare up at that point, independently of his other illness." Cascone, 370 F.3d at 104 n.12.

state court action and (2) the plaintiff presents the claim to the appropriate federal agency within sixty days after the dismissal of the action."  Id.; see also 28 U.S.C. § 2679(d)(5).[14]  Here, O'Brien fails at the first step: As explained above, he did not file in state court within two years of accrual of his claims.

### III. Conclusion

For the foregoing reasons, we **affirm**.

---

[14] The clause reads:

> (5) Whenever an action or proceeding in which the United States is substituted as the party defendant under this subsection is dismissed for failure first to present a claim pursuant to section 2675(a) of this title, such a claim shall be deemed to be timely presented under section 2401(b) of this title if—
>
> (A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and
>
> (B) the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action.

28 U.S.C. § 2679(d)(5).